## GREENE and others *against* DENNIS.

*A.,* in 1822, made his last will, containing the following devise: " I give to the *Yearly Meeting* of people called *Quakers,* of *New-England,* my farm in *Pom-*

*fret,* the net income of which to be appropriated in aid of the charitable fund of the boarding-school, established, by *Friends* in *Providence*; to them the said people called *Quakers*, and their successors in the same faith, forever." After making numerous other devises and bequests, the testator gave the residue of his estate to *B* He soon afterwards died; and his will was proved and established. The *Yearly Meeting* was composed of individuals, whose names were ascertained. It had existed as an organized body, from the year 1683, to the death of the testator; and, during that period, it had kept a record of its votes and proceedings, appointed a clerk and treasurer, raised funds by voluntary contributions. disbursed sums of money for the building of meeting-houses, celebrated marriages, had burying-places, admitted and rejected members, &c.; but it had done no acts, which it could not have performed, without being incorporated. In an action of ejectment for the land devised, brought by the heirs at law of *A.* against a tenant in possession under the *Yearly Meeting*, and also under *B.*, it was held, 1. that the individuals, who composed the *Yearly Meeting*, at the testator's death, could not take the land so devised; 2. that the *Yearly Meeting*, as a voluntary association, could not take it; 3. that the proceedings of the *Yearly Meeting*, consisting of such acts only, as it could perform without being incorporated, furnished no presumption of a charter of incorporation; 4. that if the *Yearly Meeting* were a corporation, it could not take under this devise. unless explicitly authorized, by virtue of its corporate powers, to hold property in trust for others; 5. that the devise could not be sustained, in this action, as *a charity*, as the legal title had not passed; and 6. that the subject of such devise descended to the heirs at law of the testator, and did not go to the residuary devisee.

This was an action of ejectment, for a tract of land in *Pomfret*; tried at *Brooklyn, September* term, 1825, before *Bristol, J.*

The plaintiffs claimed title to the demanded premises, as the heirs at law of *Sylvester Wickes*; and the defendant, as the lessee of the *Yearly Meeting* of the people called *Quakers*, who claimed to be the devisees of *Wickes*, and as the lessee of *Rowland Greene*, who claimed as residuary devisee. To prove his title, the defendant exhibited in evidence the last will and testament of *Wickes*, dated the 17th of *January*, 1822. The clause of the will comprising the demanded premises, was in these words: "I give to the *Yearly Meeting* of the people called *Quakers*, of *New-England*, my farm in *Pomfret*, that I bought of *Clark* and *Nightingale*, the net income of which to be appropriated in aid of the charitable fund of the boarding-school established, by *Friends*, in *Providence*; to them the said people called *Quakers*, and their successors in the same faith, forever." After making numerous other devises and bequests, the testator disposed of the residue in the following terms: "Also, I give to my said nephew *Rowland Greene*, all the rest and residue of my estate, of what kind or nature it may be, or wherever found, not herein or otherwise disposed of, on condition that he, the said *Rowland,*

*Windham,*
July,
1826.

*Greene*
*v.*
*Dennis.*

pay, or cause to be paid, all my just debts, the foregoing lega-
cies, funeral charges and the expense of settling my estate."
The testator died soon afterwards, and his will was duly proved
and approved.    The defendant also proved who the members
of the *Yearly Meeting* were, *viz.* *Benjamin Freeborn* and thirty-
two others, whose names were specified.    To prove that the
*Yearly Meeting* was a corporation, capable of taking and holding
lands by devise, the defendant adduced in evidence certain
votes and proceedings from the records of that body, beginning
in 1683, and extending to the commencement of this suit.   From
these the following are selected.

"At a *General Yearly Man's Meeting*, at *Rhode-Island*, at the
house of *William Coddington*, the 16th day of the 4th month,
1684 : *John Rodman* is desired to keep the *Yearly Meeting*
book."

At a similar Meeting, at the same place, the 14th day of the
4th month, 1686 : " It is agreed, at this Meeting, that *Thomas
Rodman* keep the stock that belongs to this Meeting."

" At a *General Yearly Meeting* at the house of *Walter New-
berry*, at *New-Port*, in *Rhode-Island*, on the 13th day of the 4th
month, 1692 : It being moved to this meeting, that whereas
*Nicholas Upshall*, of *Boston*, did formerly bequeath unto us, the
people of God, in scorn called *Quakers*, a chamber and furni-
ture in *Boston ;* but not having received the benefit thereof, do
now give power, and order our friends *Edward Shippen* and *Ed-
ward Wanton* to agree and sell our privilege and right in the
same for such a sum of money as they shall agree for."

" At our *General Yearly Meeting*, held at *Portsmouth* and
*New-Port*, in *Rhode-Island*, on the 14th and 15th days of the
4th month, 1713 : *Friends* of the last *Yearly Meeting* have
agreed, that the money remaining in *Thomas Richardson* and
*Walter Newberry's* hands, being 11*l.* 17*s.* 9*d.*, shall be delivered
or paid to *John Wing*, in behalf of *Friends* of *Yarmouth*, towards
their building a new meeting-house there."

" This Meeting think it proper to make choice of *Thomas
Leach*, as treasurer to this Meeting, ordering him to defray all
necessary charges, that may arise, at any time, out of the money
left in his hands."

" At our *General Yearly Meeting*, held on *Rhode-Island*, for
*New-England*, at *Portsmouth*, on the 9th of the 4th month, 1726 :
The *Friends* concerned in carrying on the building of the
meeting-house, at *Providence*, having informed this Meeting,

that they shall have occasion, in a short time, for money in that affair, this Meeting gives them allowance to hire some money, not exceeding 50*l.*, to be discharged, by this Meeting."

" At our *Yearly Meeting* of *Friends*, held on *Rhode-Island*, for *New-England*, the 12th of the 6th month, 1760 : Our ancient and worthy Friend, *Thomas Richardson,* having served as clerk to this Meeting upwards of forty years faithfully, and to general satisfaction, and now desires to be released from that service, which hath become heavy in his advanced years; and this Meeting having considered the same, do agree and consent to release and omit his farther appointment, for that service ; and we do hereby appoint our Friend *David Earle* to be clerk for this Meeting."

"At our *Yearly Meeting,* held on *Rhode-Island,* for *New-England,* beginning on the 13th of 6th month, 1802 : The committee to settle with the treasurer, report, that on attending thereto, find a balance in favour of this Meeting, of 385 dollars, 4 cents; and propose that 500 dollars be raised the ensuing year. The several quarterly meetings are requested to raise it in the following manner: *Rhode-Island,* 125 dollars; *Salem* 70 dollars; *Sandwich,* 225 dollars ; *Falmouth,* 30 dollars ; *Smithfield,* 50 dollars ; and forward the same to our treasurer, and an account, to next *Yearly Meeting.*"(a)

The defendant claimed, that the devise was valid to the members of the *Yearly Meeting,* in trust for the purposes mentioned in the will ; that the jury were bound to presume, that this society was a corporation, by grant, and, as such, had a right to take and hold the lands in question, for the uses mentioned in the will ; and finally, that if such lands were not legally devised to the members of the *Yearly Meeting,* and this body were not a corporation capable of holding lands, the farm was, by the residuary clause in the will, devised to *Rowland Greene,* under whom the defendant rightfully held it. But the judge instructed the jury, that the members of the *Yearly Meeting* could not take and hold the farm, as individuals, for the purposes mentioned in the will ; that the votes and acts done, by the society, however long their continuance, would not authorize the pre-

(a) These extracts are given rather as *specimens*, than as having any more direct and important bearing on the case, than a multitude of others omitted. These, it is supposed, may be sufficient to exhibit the general character of the proceedings. To copy the whole, or any considerable proportion, of them, would render the statement of the case unwarrantably prolix.

*Greene*
*v.*
*Dennis.*

sumption of a charter of incorporation, with power to purchase and hold real estate, unless they were such acts of the society as they could not perform without being incorporated; that if such devise to the *Yearly Meeting* was void for uncertainty, or because the society was not incorporated, the farm would descend to the heirs at law of the testator, and would not pass, by the residuary clause in the will, to *Rowland Greene.* The jury returned a verdict for the plaintiffs ; and the defendant moved for a new trial, on the ground of a misdirection.

*Cleaveland* and *Judson,* in support of the motion, contended,

1. That this devise was to the *individuals,* who composed the *Yearly Meeting,* at the time of the testator's death ; and, as such, was good.  It is not necessary, that the devisees be named in the will.  If from any description whatever, it can be clearly ascertained who are the persons intended, it is sufficient. And this rule is equally applicable to trustees and to *cestuy que trusts. Bartlett* & al. v. *King,* exr. 12 *Mass. Rep.* 537. 541.

2. That if these individuals could not take, the *Yearly Meeting* could take, as *a corporation.* In the first place, the votes and proceedings of this society, proved, that it had, for nearly a century and an half, acted as a corporation, and exercised the powers of such a body.  Secondly, this user ought to have been left to the jury, as presumtive evidence of a charter of incorporation.  The evidence was proper in its nature ; and the jury ought to have been permitted to decide upon its force and effect, without the qualification contained in the charge.  *Stockbridge* v. *West-Stockbridge,* 12 *Mass. Rep.* 400.  *Read* v. *Brookman,* 3 *Term Rep.* 158, 9. per *Buller,* J.  Mayor of *Kingston-upon-Hull* v. *Horner, Cowp.* 102. 110.  *Roe* d. *Johnson* & al. v. *Ireland,* 11 *East* 280. 284.

3. That if the persons who were to take, were uncertain ; and if the society named in the will, were not a corporation capable of holding lands ; still the devise was good as a *charity,* and must be carried into effect.  4 *Wheat. Rep. Append.* 11. 17. The Bishop of *Hereford* v. *Adams,* 7 *Ves.* jun. 324.  *White* v. *White,* 7 *Ves.* jun. 423.  That such a devise as this would be sustained in *England,* is unquestionable.  *Baptist Association* v. *Hart's* exrs. 1 *Wheat.* 29.  But it will be said, that it would be sustained there, on the 43 *Eliz. c.* 4. which has never been adopted here.  But that statute does not profess to give validity to devises or bequests not before valid ; its object being only

to furnish a new and more convenient mode of discovering and enforcing them. Besides, we have a statute, of an early date, which proceeds on the prineiple of the 43 *Eliz.*, declaring, that all lands &c. given for *charitable uses*, shall forever remain and be continued to such uses. *Stat.* 301. *tit.* 56. *s.* 3. This statute was passed while the General Assembly exercised chancery jurisdiction; and there cannot be a doubt, that the General Assembly would, at that time, have sustained a devise like this. The same power, in relation to this subject, may now be exercised by the superior court.

4. That if this devise must fail, for uncertainty, and cannot be sustained as a charity, then the farm in question will pass to *Rowland Greene*, the residuary devisee. *Crane* v. Heirs of *Crane*, 2 *Root* 487. *Com. Dig. tit.* Chancery. 3 Y. 13. The *English* distinction between a devise of real estate and of personal property, has never been recognized by our courts. Such a distinction here would be absurd; as both kinds of estate are distributed to the same persons; and the intent of the testator with regard to both, must be the same.

*Goddard* and *H. Strong*, contra, contended, 1. That the devise was not to any *certain individuals*; for the members of the *Yearly Meeting* were uncertain and variable; but it was to the community represented by these members; and this community, if not a corporation, could not take. *Perk. sect.* 55. *Barker* v. *Wood*, 9 *Mass. Rep.* 419. *Jackson* d. *Cooper* & al. v. *Cory*, 8 *Johns. Rep* 388. *Hornbeck* v. *Westbrook*, 9 *Johns. Rep.* 73. *Philadelphia Baptist Association* v. *Hart's* exrs. 4 *Wheat.* 1.

2. That the *Yearly Meeting* could not take under the devise as *a corporation*. First, none of their acts conduced to prove any incorporation; as they were equally legal without, as with, a charter. The records of this association shew, that it appointed certain officers, such as clerk, treasurer, committees, &c. and that it raised and disbursed monies for the building of meeting-houses, and in other ways to further the views of that denomination of *Christians* of which the members were composed. All these acts may be done, and are constantly done, by unincorporated societies; *e. g.* bible, missionary, *Sunday* school, literary, social, masonic and other societies. If any of the acts proved, could not be done, without an act of incorporation, then the defendant, under the charge, had the benefit of such evidence with the jury; and he has nothing to complain

*Windham,*
*July,*
*1826.*

*Greene*
*v.*
*Dennis.*

of.   Secondly, if an act of incorporation could be presumed from the acts proved, it would not follow, that the corporation had power to hold real estate.   A grant proved by user, is only what the user makes it.   *Hart* v. *Chalker* & al. 5 *Conn. Rep.* 311  315.   Thirdly, if the existence of a corporation capable of holding lands to its own use, were admitted, it could not hold to the use of others ; for a corporation cannot be seised to an use. *Com. Dig. tit.* Bargain and Sale. B. 3.

3. That the estate did not pass to *Rowland Greene*, by the devise of the residue ; the rule of law being, that in case of the lapse of real estate, the heir takes in preference to the residuary devisee. 2 *Madd. Ch.* 81.   *Gravenor* v. *Hallum, Amb.* 643. 645.   *Watson* & al. v. Earl of *Lincoln* & al. *Amb.* 328, 9.   *Attorney-General* v. *Johnstone, Amb.* 580.   *Wright* v. *Hall, Fortesc.* 182.   *Roe* v. *Fludd, Fortesc.* 184.   It is clear, that the testator did not *intend,* that *Rowland Greene* should have this estate. His intention was, that the *Quakers* should have it ; but if the law will not let it go to them, there is no reason why the heirs should not have it.   *Rowland Greene* has no claim to it.

HOSMER, Ch. J   The precise question to be determined, is, whether the *Yearly Meeting,* or *Rowland Greene,* in reference to the land in question, are the devisees of *Sylvester Wickes.* If they are not, the defendant, who founds himself on being their lessee, must fail in his defence.

Before entering on the enquiry, necessarily involved in the case, I will disembarrass it of some considerations urged by the defendant's counsel.

It has been insisted, that if a bequest be for a charity, it matters not how uncertain the persons or objects may be ; or whether the devisee be a corporation capable in law of taking ; and in support of the principle, a number of determinations in chancery have been cited.(*b.*)   The irrelevancy of the decisions referred to, in relation to the legal title of the parties in this case, is perfectly obvious.   The courts of equity have gone great lengths in support of bequests for charitable purposes ; and have frequently coerced the execution of them, when no legal title had been created.   The devise of lands to the churchwardens of a parish, (who are not a corporation capable of holding lands) for a charitable purpose, though *void at law,* has

*(b.)* See the cases cited in 4 *Wheat. Rep. Appendix,* 11. & seq.

been sustained in equity. *Com. Dig. tit.* Chancery. 2 N. 2. *Attorney-General* v. *Combe*, 2 *Ch. Cas.* 18. *Attorney-General* v. *Bowyer*, 3 *Ves.* jun. 714. *Mills* v. *Farmer*, 1 *Meriv.* 55. So if a devise be to an existing corporation, by a misnomer, which makes it void in law, chancery will afford relief. *Anon.* 1 *Ch. Cas.* 267. *Attorney-General* v *Platt, Rep. temp. Finch* 221. These determinations, and many others of a similar character, have been made in equity ; and if there were an application to this Court, as a court of chancery, for the execution of a trust, they would have a bearing on the subject of enquiry ; but towards the point now under discussion they have no direction. The case of *Bartlett* & al. v. *King*, ex\*r 12 *Mass. Rep.* 357. was cited for the defendant ; and the determination proves this position, that where there is a devise in trust to persons capable of taking as trustees, for the use of a voluntary association, the *cestui que trusts* may avail themselves of it as individuals. But the enquiry here is in relation to the legal capacity of the *trustees ;* and not of the *cestui que trusts ;* and hence the case cited is entirely inapplicable to the question before the court.

The defendant's counsel have referred to the 3rd section of the statute, concerning lands, (*tit. Lands, sect.* 3.) which provides, that real estate "*given or granted*" for public and charitable uses, shall remain to such uses, and no other. But the property must be "*given or granted*," before it falls within the purview of this law ; and whether this is the fact, is the question put for our determination. The law above cited, has no bearing on the enquiry concerning the legal title ; the only enquiry in the case.

Before attending to the questions presented, it may not be unuseful to state a few of the established rules for the construction of devises. A last will must have a favourable interpretation, and as near to the mind and intent of the testator, as may be ; but this intention must stand with the rules of law, and not be repugnant thereunto. *Shep. Abr. part* 10. *voc.* Testament. *Powel* on *Devises*, 426. It is, likewise, a settled principle, that the construction of a will must be derived from the words of it, and not from an extrinsic averment.

1. Can the members of the *Yearly Meeting* of the people called *Quakers*, take and hold the premises, *as individuals ?* This is the first enquiry.

In what manner the *Yearly Meeting* was composed, the motion does not state ; but throughout the argument, it has been admitted, and without the admission it is too obvious to be ques-

tioned, that the members of it assembled by delegation. The *Yearly Meeting*, it was said, is composed of representatives from the *Quarterly Meetings*, and such other members of the society within its limits, as may be present. It is very unnecessary precisely to ascertain the composition of this meeting. Two positions, in my opinion, are indisputably certain. The first is, that it was the intention of the testator to devise the estate in question, to the *Yearly Meeting*, and not to the individuals composing it. Hence, it is given to this assemblage, "*and to their successors.*" Perhaps, this distinction is unimportant; for whether the devise was to the *Yearly Meeting*, or to the members constituting it, the legal result will be the same. The devise, in either event, was not to any certain individuals; but to the members of an assembly, meeting together annually; and to such other members of this variable body, in endless succession, as by delegation should compose it. There was no antecedent certainty, that those who were the members of the *Yearly Meeting* at the death of the devisor, would continue such a single year; but in all probability there would be an annual change of, at least, part of the members, and beyond all doubt, within no distant period, they would all be swept from the stage of action. And what decisively shews the devisor's intention; anticipating this fluctuation, he provides for the performance of the trust, by designating *the successors* of the *Yearly Meeting*, and treating that body, as if it were a corporation. It is obviously opposed to the intention of the devisor, to construe the devise as vesting an estate in the individuals of the *Yearly Meeting*, being members of it at his death; and then to continue the estate in them, after they had ceased to be members. The words of the devise give the property in question, to the members of the *Yearly Meeting, and their successors*; unquestionably, intending, that none but members, should have any part in it; and the nature of the case speaks the same language. It was the testator's object to execute a perpetual trust; and this he would have done, if the *Yearly Meeting* was a corporation capable of becoming trustees of the estate devised. But, if the individuals existing at his death, and being members of the Meeting, were invested with the land devised, in fee simple, what would become of the trust, on their ceasing to be members? Scattered over a wide extent of country, without any necessary or conventional meeting; their duty as trustees they would be incapable of performing. This is the most favourable view of

*Windham,*
July,
1826.

Greene
*v.*
Dennis.

the subject.   Soon, by death, some of the individuals would leave no heirs ; others, would leave numerous minor children ; the number of the trustees would increase astonishingly ; and the difficulties, every moment, would thicken, and be more and more insuperable   It is repugnant to common sense, to ascribe to the testator the absurd intention, of constituting the individuals living at his death, his trustees.   There can exist no doubt, then, that the devise in question, was to the *Yearly Meeting*, constituted such by delegation, or to the members of it, in endless succession.

The second position alluded to, is, that the testator's intention is repugnant to the rules and principles of law.   This point is too clear, to require discussion.   A corporation alone, authorized by the sovereign power, and vested with perpetual succession, is capable of fulfilling the testator's intention.

I will cite a few only of the authorities applicable to this point, and dismiss it.

A grant to the parishioners or inhabitants of *Dale ;* or to the commoners of a certain waste ; and such like grants, are utterly void for uncertainty. *Co. Litt.* 3. *a. Shep. Touch.* 235.   So, a devise to the inhabitants of *Boxford*, living within the *North-west* parish. *Barker* v. *Wood*, 9 *Mass. Rep.* 419.   So, a grant to the people of the county of *Otsego.   Jackson* d. *Cooper* & al. v. *Cory*, 8 *Johns Rep.* 385. 388.   So, a reservation in a deed to the inhabitants of *Rochester.   Hornbeck* v. *Westbrook*, 9 *Johns. Rep.* 73.

The case of the *Baptist Association* v. *Hart's* Executors, 4 *Wheat.* 1. is, in no essential particular, distinguishable from the case before the court.   It was founded on a devise, to *the Baptist Association, that for ordinary meets at Philadelphia annually*, as trustees of certain military certificates, to constitute a perpetual fund for the education of youths of the *Baptist* denomination, who shall appear promising for the ministry.   By the court, it was held, that the association not being incorporated, at the testator's decease, could not take this trust as a society ; and that the bequest could not be taken *by the individuals*, who composed the association, at the death of the testator.   In assigning their reasons, it was said, by the court, that it was obviously the intention of the testator, that the association should take in its character as an association ; and that, not being incorporated, it was incapable of taking this trust as a society ; and the court was decidedly of opinion, that the individuals,

composing the association, at the death of the testator, could not take. "No private advantage was intended them; nothing was intended to pass to them but the trust; and *that* they are not authorized to execute as individuals." "It is the association forever," said Ch. J. *Marshall,* "not the individuals, who, at the time of the testator's death, might compose the association, and their representatives, who are to manage this *perpetual fund.*"

From the cited cases it is unquestionable, that the devise to the *Yearly Meeting,* if it was not incorporated, was void.

2. The next question that arises, in the case, is, whether the *Yearly Meeting* was a corporation, capable of holding land in trust.

By a corporation, is understood, in contradistinction from a voluntary association of individuals, a society created by the sovereign power.

At the trial of this cause, no charter of incorporation was exhibited. It, however, was contended, from a long and continued exercise of certain acts, that an incorporation ought to be presumed.

That a grant or charter is presumable, from the long continued exercise of authority, is indisputable, and has not been disputed; and all the cases cited, by the defendant's counsel, tend only to prove this unquestionable principle. The enquiry, in this case, involves no question of law, and turns entirely on a point of fact. Admitting all the acts done by the *Yearly Meeting,* for more than a century, to have been lawful, do they warrant the presumption, that they were incorporated? This is the precise enquiry; and in his charge to the jury, the judge, recognizing the law of presumptions, instructed them, that the acts done must have been such as an unincorporated *Yearly Meeting* could not have performed. When fairly construed, the following was, virtually, the opinion expressed. If the acts done by the *Yearly Meeting* bear on the face of them the impress of corporate acts; such as individuals cannot, and a corporation alone is competent to, perform; you may presume the *Yearly Meeting* to be a corporation: But if their acts were within the competency of individuals to perform, they furnish no ground to presume, that they were other than the acts of individuals. The inference to be drawn, by the jury, was of a fact enquired after, from facts established; and their reasoning was to be from the effect to the cause. The law made no inference on the subject, nor gave

to the testimony a technical efficacy, beyond its simple and na-
tural operation.   The principle had before been recognized in
*Hart* v. *Chalker*, 5 *Conn. Rep.* 311.   "A usage," said the court,
" supposed to be founded on a grant or agreement, determines
the extent of the supposed grant or agreement.   The right
granted is supposed to be commensurate with the right enjoyed.
They are different *media*, proving precisely the same fact; and
it is because of this identity of proof, that the usage is supposed
to evince the grant.   In short, like a seal, with its correspon-
dent impression, the grant and the usage are, in point of proof,
precisely and identically the same."

The principle declared, by the judge, was, unquestionably,
correct; and the verdict of the jury necessarily implies, that
the *Yearly Meeting* was not a corporation.

From the evidence exhibited, and spread on the motion be-
fore us, my mind is led to the same results.   Every act of the
*Yearly Meeting* is entirely reconcileable with the belief, that it
was done by persons, not by virtue of corporate authority,
but as a voluntary association of individuals.   Let it be sup-
posed, that the members of the *Yearly Meeting* were a delega-
tion, to whom was confided the supervision of the spiritual con-
cerns of the people called *Quakers;* that by voluntary contri-
bution of their constituents, and others, they were invested with
funds to this end; and that they directed the general concerns
and the application of their funds, by joint agreement, and with
no more of compulsion, than is implied, in the voluntary and
cheerful acquiescence of those, whose interests they were pur-
suing.   Superadd to this, that they kept records of their pro-
ceedings; that they appointed a clerk and treasurer; that they
held lands, as individuals, for the general advantage; that they
advised the payment of money, and sent to the respective quar-
terly meetings for their proportion; that *in fact*, they celebra-
ted marriages; had burying places; and admitted members of
their Meeting, or discarded them.   Every one of these acts
might be done by them as individuals, without corporate author-
ity, and without coercion, except over their own funds.   Their
organization for the transaction of business and disposing of
their property, with a president at their head, (which, I believe,
did not exist;) with their clerk, and treasurer, and minutes of
their proceeding, were nothing more than is usually done, by
an unincorporated library company or bible society, or other
voluntary assemblies.   It does not appear, that land or proper-

*Windham,*
July,
1826.

Greene
*v.*
Dennis.

*Windham,*
July,
1826.

Greene
*v.*
Dennis.

ty of any kind, was held by the *Yearly Meeting*, unless as tenants in common; or that a tax was laid by them, other than an appointment for a voluntary contribution; nor is there exhibited, in their constitution, organization, or proceedings, one mark or *indicium* of a corporation. Nothing was done by them, beyond the competency of individuals.

So far as the testimony adduced may be relied on, the members of the *Yearly Meeting* have never exercised one of those incidents, which necessarily and inseparably are annexed to every corporation. They have no perpetual succession, the primary object of corporate authority; there has been no suing or being sued, no granting and receiving, no holding of lands or estate for their own use, or that of others, as a corporation; no common seal, by which the intention of a corporate body is manifested; and no by-laws, for the better government of themselves. They appear to have had the capacity of agreeing, of advising, and of disposing of their own, as individuals; and beyond this, no capacity of theirs is discerned.

The inference from such premises, that the *Yearly Meeting* was incorporated, would be as groundless, as the supposition, that an individual, by virtue of his personal acts, gives proof of his being a corporation.

It is not sufficient for the defendant to shew, that the *Yearly Meeting* was a corporation; but he must proceed further, and prove, that it is authorized, by virtue of its corporate powers, to hold property in trust for others. Such confidence is not incidental to every corporation, but in general, it is foreign to the end of its institution. Hence, a corporation cannot be seised of land to the use of another, (*Bro. Abr. tit.* Feoffment. D. *Cruise on Uses* 22.) unless it has explicit authority for this purpose. Now, what act was ever exercised, by the *Yearly Meeting*, from which this power may be presumed? No such act appears; and hence the presumption of the corporate power in question, cannot be made.

I conclude, then, that the *Yearly Meeting* never was a corporation; and if it were, that it never had the capacity of becoming a trustee for others.

3. It remains for consideration, the devise in question to the *Yearly Meeting* being void, whether the land demanded, descended to the heirs at law of the devisor, or were transferred to the residuary devisee.

In relation to real estate, it is an established principle, that in

case of a lapsed devise, the estate does not vest in the residuary devisee, but descends to the heir at law of the testator. Wills must be construed by the intent of the devisor, at *the time of making them.* Of consequence, when property is given to a person incapable of taking, and there is a general devise of the residue; so far as respects the estate specifically devised, at the time of the will's being made, there is an intentional disposition; and it never was designed, that it should fall into the *residuum.* The law respecting the bequest of personal estate, is different; but as to the realty, the decisions have been uniform and unquestioned. *Wright* v. *Hall, Fortes.* 82. *Ro* v. *Fludd, Fortes.* 182. *Doe* d. *Morris* & al. v. *Underdown, Willes* 293. *Watson* & al. v. Earl of *Lincoln* & al. *Amb.* 338, 9. *Attorney-General* v. *Johnstone, Amb.* 580. *Gravenor* v. *Hallum, Amb.* 643. 645. 2 *Madd. Ch.* 81. The case of *Crane* v. *Crane,* 2 *Root* 487. scarcely requires being mentioned, by way of exception, as it was little discussed, and without the citation of any authority.

The other Judges were of the same opinion.

New trial not to be granted.