These ejectments were presented to the court on the following case stated:
Mary James being seized in fee of the premises in question by her last will and testament, dated the thirtieth day of July, A.D. one thousand eight hundred and thirty-one, devised as follows:
I Mary James of the borough of Wilmington in the county of Newcastle and state of Delaware, being considerably advanced in years and very infirm in body, but of a sound and disposing mind and memory, blessed be Almighty God for all his mercies, do make and publish this my last will and testament in manner and form following, that is to say: Imprimis. It is my mind and will that all of my just debts and funeral expenses shall be paid by my executors hereinafter named, out of my personal estate, as soon as convenient after my decease, and I do hereby order and direct my executors to have my body deposited in Trinity Church burying ground in the borough of Wilmington afsd. and to cause a plain marble tomb erected over my grave. Item. I give and bequeath to my niece Rebecca Biddle all the interest or dividends which shall become due and payable from time to time from the day of my decease, on six shares of stock standing in my name on the books of the Bank of Delaware, to take, receive and enjoy the said interest or dividends during the term of her natural life, and at her decease I give and bequeath the said six shares of stock to Saint Andrew's Church in the said borough.
Item. I give, bequeath and devise also to Saint Andrew's Church in the said borough, all my lot of land situate in the said borough bounded (c. describing it) together with a three story brick house thereon erected, with the appurtenances: to have and to hold the use of the said house and lot to the said church forever, but not to be sold on any account whatever.
Item. I give and bequeath to the said St. Andrew's Church the sum of one thousand dollars, loaned to the corporation of Wilmington at five per cent, as per certificates, principal and interest, from the day of my decease, to be paid to the church wardens and vestry of the said church, for the use and benefit of the said church. Item. I give and bequeath to Hannah Ball, my silver cream urn. Item. I give and bequeath to Mary Ball, daughter of James Ball, deceased, my silver tea pot and silver sugar dish. Item. I give and bequeath to Isabella Ball one silver soup ladle and six silver tea spoons marked F. Item. I give and bequeath to Mary Few the daughter of my cousin William Few, my silver coffee pot. Item. I give and bequeath to Trinity Church, in the said borough, four shares of stock *Page 525 
standing in my name on the books of the Wilmington and Kennet Turnpike Company, to be paid to the church wardens and vestry men of the said church, for the purpose of building a stone wall round a part of the church yard as far as it will go, and for no other use whatever. Item. I give and bequeath to my nephews Richard Silence and his brothers and one sister all my sixteen shares of stock in the Wilmington Bridge Company, to be divided between them, share and share alike.
Item. I give, bequeath and devise to William Ball and Mary Ball children of the said James Ball, deceased, and to John M'Knight, all the residue of my estate real and personal of whatever kind it may be, after payment of the legacies before mentioned, debts and funeral expenses, as afsd. to be paid to them the said William Ball, Mary Ball and John M'Knight or to the survivors of them, share and share alike, within one year after my decease.
And lastly, I do hereby nominate, constitute and appoint my friends William Seal and John Bullock, both of the said borough, executors of this my last will and testament, hereby revoking, c. and declaring,c., dated 30 July, 1831.
The questions submitted were, first; whether the devise of the premises in question to Saint Andrew's Church was void. Second; whether the said premises belonged to the heirs at law of the devisor or whether they passed under the said will to the residuary devisees. If the court should be of opinion that the devise of the said premises to Saint Andrew's Church was not void, then judgment to be entered for the deft. in both actions. If the court should be of opinion that the said devise was void and that the said premises belonged to the heirs at law of the devisor, then judgment to be entered for the plff. in the case of Ferguson's lessee and others, and a nonsuit in the case of M'Knight's lessee and others. If the court should be of opinion that the said devise was void and that the said premises passed under the said will to the residuary devisees therein mentioned, then judgment to he entered for the plff. in the case of M'Knight's lessee and others, and a nonsuit in the case of Ferguson's lessee and others.
It was further agreed by the counsel in M'Knight's case that the residuary devise in said will should be considered as having taken effect immediately upon the death of the devisor; and that the lessor of the plff. in said case should in any event pay the costs of suit.
MacBeth, for the heirs at law. The first question depends on the act of assembly, (Digest, 459, sec. 3) which declares void all gifts, grants, bargains, sales and conveyances of lands or money to be laid out in land, made to any religious society, unless such gifts, grants, c. be made by deed indented, twelve months at least before the death of the donor, c. and without any power of revocation. The devise in this will to Saint Andrew's Church, is a plain and direct violation of the act, and is consequently null and void. The important question therefore is between the heirs at law and the residuary devisees in relation to this property, which the law will not permit to go in the manner intended by the testatrix. If this question is to be decided by the intention of the testatrix (and this is said to be the rule by which wills ought to he expounded) it is perfectly clear that Mrs." James did not intend this property to go to the *Page 526 
residuary devisees, and did not suppose it to be embraced in the general residuary clause. She supposed she was giving it to the church and that she had the right so to give it. But it may be answered, no more did she intend it to go to her heirs at law, having manifested a different intention by attempting to dispose of it otherwise. Granted; but still the heir at law shall be preferred; he shall never be disinherited but by express words or necessary implication. Prec. inChy. 473; Cowp. 99; Cruise Dig. The distinction is well established between a lapsed legacy and a lapsed devise of real estate; the former passes into the residuum because the will passes all the personal property which the testator may have at the time of his death, but as to the real property it regards only such as he may have at the date of the will. A lapsed devise therefore is regarded as not having been disposed of by the will and goes to the heir at law. 4 Kent.Com. 541; 8 Vezey, jr. 24; 6 Cruise Dig. 169.
A further distinction has been attempted and is loosely recognized by respectable authority, between a lapsed and a void devise. 4 Kent.Com. 542; Doe vs. Sheffield, 13 East, 526; but is not well supported by the English authorities; has not been followed by American cases; and is unintelligible in principle. As referred to the intention of the testator, it cannot be supported. There is no such distinction between lapsed and void legacies. (5 Mass. Rep. 500; 2 Vernon, 394) and there exists no reason for it in the case of real estate. It is a distinction without a difference. And the case ofGreen et al. vs. Dennis, 6 Conn. Rep. 292, adjudges the land to the heir though the devise was void from the beginning.Hormer Chief Justice said "The devise being void, it is to be considered whether the land descended to the heirs at law of the devisor or were transferred to the residuary devisee." In relation to real estate it is an established principle, that, in case of a lapsed devise, the estate does not vest in the residuary devisee but descends to the heir at law of the testator. Wills must be construed by the intent of the devisor at the time of making them; of consequence, when property is given to a person incapable of taking and there is a general devise of the residue, so far as respects the estate specifically devised at the time of the will being made, there is an intentional disposition, and it never was designed that it should fall into the residuum. The law respecting the bequest of personal estate is different; but as to the realty, the decisions have been uniform and unquestioned. Fortesq. 182; Willes' Rep. 293, 7; Amb. 338, 9 580, 643, 5; 3 P. Wms. 20.
Booth and J.A. Bayard declined arguing the case on the part of the church.
Gray, for the residuary devisees. The counsel for the church having abandoned the cause so far as they are concerned, I shall not consider it necessary to examine the first question, whether this devise is void. On the other question, the distinction is well established between lapsed and void devises; and whether proceeding on broad or narrow grounds it is fully taken. But the reason of it is sufficiently apparent. In the construction of wills we are always to refer ourselves to the condition of things at the time of making *Page 527 
the will and not after. (Willes Rep. 297.) " Where the testator has given away all his estate and interest in certain lands, so that if he were to die immediately, nothing would remain undisposed of, he could not intend to give any thing in those lands to his residuary devisee." The reverse of this proposition must also be true that where the testator has not disposed of certain property by a specific bequest it falls within the general residuary bequest of "all the residue of her estate real and personal;" and this constitutes the plain difference between a lapsed and a void devise; in the former the devise is good at the date of the will; the subject of it is actually disposed of by the will and cannot sink into the residue; the latter is void from the beginning; passes not by the specific devise, but is included from the moment in the residuary clause. All the cases cited on the other side are cases either of lapsed or of conditional devises.Vezey, jr. is a lapsed devise; P. Wms. and Ambler
contingent, and so of the rest. The only exception is the case from Connecticut Reports, where the residuary clause seems from a remark in Kent's commentaries (4 Kent. Com. 542) to have been considered as not sufficiently comprehensive; but which, if considered as a case in point, is against all the authorities. 13 East, 526; 3 Maule Selwyn. 300.
Read, Jr., on the same side. Looking at the train of authorities, what has been the rule of decision in cases similar to the present in the courts of that country from which we derive our common law? Have those decisions been varied or altered by the cases in our own courts; or is there any thing in our condition or policy which should vary our views of this question from those which the most learned judges have taken of it? It is not enough to say that the rule is based on a refined and unintelligible distinction; by this argument many of the best established maxims of the law might be shaken; the rule in Shelley's case for example. It is enough for us to say ita lex scripta est, and to enforce the rule of stare decisis by that sensible observation of a learned judge, that "it is perhaps of less importance how the law is determined, than that it should be determined and certain." (Per Ashhurst, J. 7 Durnfd. East 419; Ram onJudgment, 5. The first object in construing a will, is to discover if possible the intention of the testator. What was it in this case? She evidently designed to part with all her property by will and not to die intestate as to any portion of it. She intended that her heirs at law should become entitled to her property only under her will. She commences with a direction about her funeral expenses, c. parcels out her property to the objects of her bounty according to her pleasure, and concludes by a general bequest to William Ball, Mary Ball and John McKnight, of "all the residue of her estate real and personal." Is it not apparent that at the time of making this will Mrs. James did not intend that her heirs at law should have any more or other part of her estate than she had specifically devised to them? With regard to the particular estate in controversy doubtless she intended the church should have it. That was the first object of her bounty? Who next? We are not left without an alternative; the will shows who; the residuary devisees were designed to have all her estate both real and personal which she had not disposed of to others. *Page 528 
The present property is precisely in that condition; and it affords an illustration of the distinction between lapsed and void devises which has been pronounced unintelligible.
Wales, in reply, for the heirs at law. Beyond a doubt the intention of Mrs. James was to give this estate to Saint Andrew's Church. It is equally clear that she supposed she had effected this intention. How then can it be argued that there is an intention to be collected from the will itself, of giving this same property to other persons. Because she gives all the "residue" of her estate to Ball and others, it is argued that she intended to include in this residue that which was not residue, but which she had previously disposed of in another manner. It is impossible to sustain a decision giving this estate to the residuary devisees on the ground of the intention of the testatrix. Can it be sustained on the authority of adjudged cases? The other side is confident that it may, but it is remarkable that they have not produced a single adjudged case sustaining their principle to its extent. In Stewart's lessee vs. Sheffield, (13East 526;) the land was adjudged to the particular devisee; it was not the case of a void devise; and though the judges speculate on what would have been the consequence if it had been, the point was not considered or decided. Neither does Doe ex dem. Wells vs.Scotts et at. 3 Maule Selw. decide the question. And the elementary writers lay it down loosely; some of them with hesitation. (4 Kent. Com. 542.) In the absence of any proof of intention on the part of the testatrix, the only safe rule is that of the common law, that the heirs shall not be disinherited but by express words or necessary implication. Prec, in Ch'y. 473.
 Cur. adv. vult.
 Chief Justice Clayton delivered the opinion of the court.
Mary James being seized in fee of the premises in question by her will duly executed, dated 30th July, 1831, gave and devised to "Saint Andrew's Church in Wilmington, all a certain lot of land therein described, to have and to hold the use of the said house and lot to the said church forever; but not to be sold on any account whatever." And after bequeathing sundry legacies, there is this clause in her will: — "litem, I give, bequeath and devise to William Ball and Mary Ball, children of James Ball, deceased; and to John McKnight all the residue of my estate real and personal of whatever kind it may be." The lessors of the plff. are the residuary devisees.
It is not contended in this case that the devise to Saint Andrew's Church, passes any estate in the premises in question to the church; but it is admitted that the devise is void by the laws of this state. That question was decided at the last May Term in Kent, in the Stateuse of Wiltbank et al. vs. Bates. The question here is, who take? the heirs at law of Mrs. James, or her residuary devisees?
Since the case of Doe on the demise of Morris vs. Underdown,Willes 293, that question seems to be completely settled in England. In that case the distinction, as far as we can ascertain, was first established between a lapsed devise, and a void devise. The principles laid down by the chief justice in that case were these: that the intent of the testator ought always to be taken as things stood at the making *Page 529 
of his will, and is not to be collected from subsequent accidents which the testator could not then foresee; and that when a testator in his will has given away all his estate and interest in certain lands, so that if he were to die immediately nothing remains undisposed of, he cannot intend to give any thing in these lands to the residuary devisee. This latter rule would govern all cases of lapsed devises; for if the testator were to die immediately upon the making of the will there would be nothing undisposed of, and the devisee would take; but if the devisee were to die between the making of the will, and the death of the testator, the devise would lapse and the heir at law would necessarily take in preference to the residuary devisee, for it was not undisposed of at the making of the will, but the devise was rendered inoperative by a subsequent accident — the death of the devisee. This is not so in the case of a void devise; for there at the making of the will nothing passes, nothing is disposed of, and the residuary devisee under the clause "all the residue of my estate" takes, and not the heir at law. In Doe lessee of Stewart vs.Sheffield, 13 East 526, this is considered as the settled law; and in Doe on the demise of Wells and others vs. Scott and another 3 Maule and Sel. 300, Lord Ellenborough in delivering the judgment of the court recognizes the authority of the two preceding cases as "admitted law" on the subject.
We are not unaware of the American decisions on this subject in 6Conn. Rep. 292 and in Lingan vs. Carroll, 3 Harr.and McHen. 333; but we prefer following the authorities which we have cited. The heirs at law do not appear to have been objects of the testator's bounty; they are no where mentioned in her will. This circumstance is not relied on in forming our judgment, but merely to show that the testatrix did not desire that her heirs at law should derive any benefit from her estate. Our decision is founded upon the authorities which we have cited, and upon the principles established by them. Our opinion is therefore for the residuary devisees, and judgment is accordingly given for the plff's. in the case of the lessee of McKnight and others vs. Hedges; and in the other case, lessee of J. Ferguson and others the heirs at law of Mary James against the same deft. that judgment be given for the deft."