WILLIAM H. REMINGTON, ADMINISTRATOR, *vs.* THE AMERICAN
BIBLE SOCIETY AND OTHERS.

In case of a lapsed devise, the real estate devised goes to the heir at law and
not to the residuary devisee.

The statute (Gen. Statutes, tit. 18, ch. 11, sec. 28,) provides that executors and
administrators shall, during the settlement of the estate, have possession and
control of the real estate, where the same is not specifically devised, and that
all the products and income therefrom shall vest in them in the same manner
as personal property. Held that such possession and control were for the
benefit of the persons entitled to the real estate, and that the rents and profits
received from it were to be regarded as an incident of the real estate, and if
not needed for the payment of debts were to go with it, and did not go to the
residuary legatees.

PETITION to the Superior Court in Hartford County for
advice as to certain questions arising under the will and in
the settlement of the estate of Betsey Hanchett. The peti-
tioner was administrator with the will annexed.

The testatrix resided at Suffield, in this state. By her will,
which was executed on the 15th of October, 1869, she gave a
farm in Suffield to one Silas Adams, with such farming uten-
sils, stock and furniture as might be in her possession at the
time of her decease, and after making numerous pecuniary
legacies, among which were one of twelve hundred dollars to
the American Bible Society, one of one thousand dollars to

the American Board of Commissioners for Foreign Missions, one of five hundred dollars to the Mount Holyoke Female Seminary, and one of one thousand dollars to the First Congregational Church of Suffield, she made these four institutions residuary legatees of her estate, to share it in proportion to their several prior legacies.

The petition represented that Silas Adams, the devisee of the farm, died in 1871, before the death of the testatrix, which occurred in 1873, and that he was not a child or grandchild of the testatrix and that the devise therefore lapsed, and that no provision was made in the will for such an event; that the farm was of the appraised value of $9,000; that the petitioner had had under the statute the possession, care and control of the farm since his appointment as administrator, and had in his hands about one thousand dollars which he had received as rents and profits from the farm; that neither the land nor this money were needed for the payment of debts; that there was in his hands a quantity of househould furniture, belonging to the house on the farm, inventoried at about three hundred dollars; that the personal property belonging to the estate was of the value of about nine thousand dollars; that the four institutions named had received their legacies in full and as residuary legatees about twenty-five per cent. in addition; and that the residuary legatees claimed that, by reason of the lapsing of the devise to Adams, the farm fell into the residuum of the estate, and that the rents and profits received from the farm, and the household furniture, came to them as personal estate.

The residuary legatees and the heirs at law of the testatrix were made respondents, and the petition prayed that they might be required to interplead, and that the court would adjudicate between them and settle their respective rights, and advise the petitioner as to his duty in the matter.

The court found the allegations of the petition to be true and reserved the case for the advice of this court.

*S. Barbour*, for the petitioner.

*A. P. Hyde* and *E. Hall,* for the residuary legatees.

*H. S. Barbour*, for the heirs at law.

PARDEE, J.   Formerly in England the rule prevailed that a lapsed legacy of personal property fell into the residuary estate, and a lapsed devise of real estate went to the heirs at law.   The reason usually assigned in the books for this distinction is, that a devise of real estate operated only upon land whereof the testator was seized when he made his will, inasmuch as that instrument was deemed to be in the nature of a conveyance or appointment of a specific estate; whereas a bequest of personal property refers to such as he might own at the time of his death.   Some of the courts in this country, in adopting and affirming this rule as to lapsed devises of real estate, have also adopted and affirmed this reason as their own.   Others have reached the same result acting upon another principle which obtains in the construction of wills, namely, that the heir at law takes all real estate unless the testator has effectively disposed of it to some one else; that when the devisee dies after the making of the will and before the death of the testator, the latter is held to have designed the estate for the particular person and to have made no disposition of it beyond that; and that from the fact of such omission an irresistible presumption arises that he did not intend to take it away from the heir at law upon the happening of such an event; for if such had been his intention he would have provided in his will for such a contingency.   Our own court adopted the rule for the reason that the intent of the testator at the time of making must govern, and that where there is a general devise of the residue and a lapsed devise, so far as the latter is concerned, the testator when making his will intended to dispose of it specifically and did not design that it should fall into the residuum.   In *Greene* v. *Dennis*, 6 Conn., 304, HOSMER, J., speaking for the court, said: "In relation to real estate, it is an established principle that in case of a lapsed devise the estate does not vest in the residuary devisee, but descends to the heir at law of the tes-

tator.   Wills must be construed by the intent of the devisor
at the *time of making them.*   Of consequence, when property
is given to a person incapable of taking, and there is a general
devise of the residue, so far as respects the estate specifically
devised at the time of the will's being made, there is an inten-
tional disposition, and it never was designed that it should
fall into the residuum.   The law respecting the bequest of
personal estate is different, but as to the realty the decisions
have been uniform and unquestioned.   *Wright* v. *Hall,* Fortes.,
82; *Roe* v. *Fludd,* Fortes., 182; *Doe d. Morris* v. *Underdown,*
Willes, 293; *Watson* v. *Earl of Lincoln,* Amb., 338, 9; *Attor-
ney General* v. *Johnstone,* Amb., 580; *Gravenor* v. *Hallum,*
Amb., 643, 645; 2 Madd. Ch., 81."

In 1831 our own legislature enacted a law which provides
that "any person having power to dispose of real estate by
will or testament, may by such will devise real estate not
owned by him at the time of making the same, but acquired
afterwards."   In 1838 in England an act of Parliament was
passed containing substantially the same provision.   Similar
statutes exist in Massachusetts, New York, Virginia, New
Hampshire, Pennsylvania, Maine, Vermont, and several other
states.   Doubtless some of the courts which had previously
affirmed the old English rule upon principles laid down and
reasons given by English courts, have now abolished the dis-
tinction between lapsed devises and lapsed legacies, inasmuch
as the enactment of these statutes has destroyed the original
reason for its existence; and it would appear that these
courts have given to their respective statutes more power over
the rule of law referred to than did the courts in England;
for there the act of Parliament made the new rule as to lapsed
devises of real estate which several of our own courts have
established upon reasoning and upon analogies.

But, as in our own state the rule has stood from the first
upon another principle, and as that principle remains unaf-
fected by the change in legislation, the rule itself stands un-
changed by our own court.   In *Brewster* v. *McCall's Devisees,*
15 Conn., 275, STORRS, J., said: "The devise to the Cornwall
school having failed, a question is made whether that portion

of the estate vests in the last mentioned society, which is the residuary devisee, or in the heirs of the testator. That point was deliberately settled in the case of *Greene* v. *Dennis*, 6 Conn. Rep., 292, where it was held that the subject of the devise descended to the heirs at law, and did not go to the residuary devisee. The same question has since undergone an elaborate examination in the state of New York, and been similarly decided, in the case of *Van Kleick* v. *The Dutch Church of New York*, 20 Wend., 457. The authorities and reasoning on the subject are so fully gone into in those cases, and also in *Lingan* v. *Carroll*, 3 Harris & McHenry, 333, that it is only necessary to refer to them. As to that part of the estate, therefore, of which the devise is void, it is to be distributed to the heirs as intestate estate."

This case was determined in 1842; the will there in question was made, it is true, in 1826, five years prior to the enabling act of 1831; and while the court determines that for that reason the land acquired after the execution of the will did not pass by a devise therein, yet the plain import of the decision, derived as well from what it says as from what it does not say, is, that the rule of law which carried lapsed devises of real property to heirs at law, as laid down in *Greene* v. *Dennis*, for reasons there given, remains and still is the law of Connecticut. It is not suggested by the court that it was abolished or even affected by the statute of 1831.

The statute, (Revision of 1875, title 18, chap. 11, sec. 28,) provides that the executors and administrators of deceased persons shall, during the settlement of the estates of such decedents, have the possession, care and control of their real estate; and all the products and income of such real estate during such time shall vest in the executors and administrators in the same manner as personal property, if such real estate shall not have been specifically devised, nor any directions given by will with regard to it, inconsistent herewith." Upon this the residuary legatees insist that, even if the real estate passed to the heirs at law, the rent which that estate earned after the death of the testatrix belongs to themselves. We cannot accede to this proposition. When a decedent

has omitted to control by will the destination of his property, in certain cases the realty takes a line of descent different from that taken by the personalty. For instance, by our common law a lapsed devise goes to the heirs at law, while a lapsed legacy goes to the residuary legatee if there be one; again, if a man dies childless and intestate, having brothers both of the whole and half blood, and leaves real estate inherited from a kinsman, and personal property, our statute of distribution carries the former to such of the brothers as are of the whole blood of the person from whom it came, and the latter to such of them as are of the whole blood of the intestate. In each of these instances the presentation of disputed claims against the respective estates might delay the work of the administrator for several years; when the time comes for final settlement he may have in his hands rent earned by the realty; he has stood as the representative, in a certain sense as the trustee, of the persons to whom the law would carry the land when it had been judicially determined that it was not needed for the payment of debts; the law has made him the temporary recipient of the title for the purpose of enabling him to defend the land from acts of trespass, to enforce payment of rent, and to hold the income until it shall be known whether it is to go to heirs or creditors. Now, leaving out of view for the moment the statute relied upon by the residuary legatees, we think that in the case at bar, when it is settled that the farm belongs to the heirs at law, and in the supposed case when it is known that the real estate is not needed for the payment of debts, and it goes to those whom the law points out as the owners, there would go with it in each case as its proper incident the rent earned by it during the period of litigation, and that they are to profit by the earnings of the land as fully as if no unfounded claim had prevented them from taking possession upon the death of the intestate. We cannot see that any other person can rightfully ask for this money. It is true, the statute says that the income of such real estate "shall vest in the executors and administrators in the same manner as personal property;" but we think this expression is descriptive simply of the man-

ner in and the extent to which the administrator is to be vested with the right to enforce payment of this rent money and thereafter hold it against all claimants while the true ownership remains uncertain and until his final settlement; that it does not, and was not intended to, put a statutory stamp upon it as personal property for the mere purpose of separating it from its principal and sending it away upon the diverging line of descent, which, in the case at bar, the law gives to personal as distinguished from real property. There being in its language no explicit reference to that subject, we cannot upon mere inference say that it is a change of either the common or statute law of distribution. All considerations compel us to say that the residuary legatees, who by their effort to establish a groundless claim to this farm have hitherto barred the rightful owners from the possession thereof, should not now be rewarded with the rent which it had earned during the period of litigation; it would be as inequitable as it is unnecessary thus to invite litigants into court. We advise the Superior Court that the devise to Silas Adams having lapsed, the realty descended to the heirs at law of the testatrix; that they are entitled to the accumulated rents; and that the residuary legatees are entitled to such farming utensils, stock and furniture as were in her possession at the time of her decease.

In this opinion the other judges concurred.