## BREWSTER and others *against* McCALL's devisees.

Where a testator made his will, in 1826, devising to his wife certain lands, and then adding this clause,—" and if I should buy any lands adjoining or contiguous to the farm that I now live on, my wife to have the improvement thereof during her natural life," and then devised the residue of his estate to others; the testator afterwards purchased other lands of this description, and died in 1838; it was held, 1. that by the settled construction of the *English* statute of wills, no interest in such after-purchased lands would pass, under such a devise, to the devisee; 2. that this construction has not arisen from the particular phraseology of that statute, but from the character of the instrument, it being considered as in the nature of a conveyance or appointment of a specific estate; 3. that the object of our statute, though not couched in the same words, is the same, and there is no such diversity as to justify a different construction; 4. that our statute of 1831 is not merely declaratory, but was intended to effect a change in the law of this state; 5. that it did not operate upon the will in question so as to give validity to its provisions regarding the after-purchased estate; consequently, the lands purchased by the testator, subsequently to the execution of the will, did not pass by it, but descended to his heirs at law.

Where the testator gave by his will, to his wife, one third of the use of a certain farm, during her natural life, " together with the stock of said farm;" it was held, that the devisee took an absolute interest in said stock, and not an estate for life only.

A devisee may be designated, by description, as well as by name; and such a description is as available, in the case of a corporation, as of a natural person.

Therefore, where the testator gave one fourth part of all his estate, not previously disposed of, " to *The Missionary Society of Foreign Missions,* two

thirds to be appropriated for the natives of this land;" and it did not appear that there was any society for foreign missions bearing that precise name; but evidence was introduced to shew, that there were several societies pursuing the object of foreign missions, in existence when the will was executed, among which was one, incorporated by the name of " *The American Board of Commissioners for Foreign Missions;*" that of four others, two were never incorporated, and one not until the execution of the will; that the fourth was established, by a denomination of *Christians* to which the testator did not belong, not operating, nor having any organization, in this state; that before the execution of the will, he was intimately connected with the *A. B. C. F. M.*, by being a prominent and active member of one of its auxiliary societies established in the vicinity of his residence, to aid the principal society, by raising contributions to its funds; that he was one of the officers of such auxiliary society, and paid to its treasurer the amount of the annual subscription required of its members; that he was also a member and an officer of another auxiliary society, in his own town, having the same object in view; and that his religious views accorded with those under whose patronage the *A. B. C. F. M* was conducted; and it appeared from the will, that the devises contained therein to other benevolent objects, were in furtherance of his religious views; it was held, 1. that this devise was not void on its face for uncertainty as to the devisee intended, this not being a case of patent ambiguity; 2. that the extrinsic evidence introduced, was proper to ascertain such devisee; 3. that under the circumstances proved, in connexion with the will, the *A. B. C. F. M.* was sufficiently designated, as the devisee, by *description*; 4. that the devise was not void as to the "two thirds to be appropriated for the natives of this land," on the ground that the *A. B. C. F. M.* has no power, by its charter, to make such appropriation, inasmuch as that institution was incorporated "for the purpose of propagating the gospel in heathen lands," which expression is strictly applicable to the *Indians* on this continent.

*New-London*
July, 1842.

Brewster
*v.*
McCall's
devisees.

Where the testator gave one eighth part of all his estate, not previously disposed of, to " *The American Tract Society;*" and it appeared from extrinsic evidence, that previous to the execution of the will, there had existed two societies of that name, one established at *Boston,* and the other at *New-York;* the former was incorporated and capable of taking, the latter was not; and besides, the latter became united to the former as an auxiliary, before the execution of the will; it was held, that *The American Tract Society,* established at *Boston,* was the object of the testator's bounty, and entitled to receive it.

Where the testator gave one eighth part of all his estate, not previously disposed of, to " *The Foreign Mission School at Cornwall, Ct.;*" and it appeared from extrinsic evidence, that before the execution of the will, the *A. B. C. F. M.* had established a school at *Cornwall,* in this state, for the education of heathen youth, both *American* and *Asiatic,* to fit them to be missionaries; but this school was never incorporated, and was discontinued before the testator's death; it was held, that said school had no capacity, and the *A. B. C. F. M.* were not entitled, to take under this devise.

Where the testator, near the close of his will, gave all the rest of his estate, not previously disposed of, after his just debts and funeral charges were paid and suitable monuments were erected at his grave, to " *The Society for ameliorating the condition of the Jews;*" and it appeared from extrinsic evidence, that in the year 1820, before the execution of the will, a society was incorporated

by the legislature of *New-York*, by the name of " *The American Society for ameliorating the condition of the Jews* ;" and it did not appear, that any other society for a like purpose, was ever formed in this country; it was held, 1. that the society so incorporated was entitled to this devise; but 2. that this society did not, as residuary devisee, take that part of the estate the devise of which was void, but this descended to the heirs as intestate estate ; 3. that the debts, funeral charges and expense of monuments, were to be deducted out of the residuary portion of the estate, but the expenses of settling the estate were to be charged, as in ordinary cases.

THIS was an appeal, by *Dyer Brewster* and others, heirs at law of *Dyer McCall*, deceased, and by *The American Society for ameliorating the condition of the Jews*, from a decree of the court of probate for the district of *Norwich*, making distribution of said *McCall's* estate.

For many years prior to the 9th of *March*, 1826, *Dyer McCall* was a member and deacon of the *Congregational* church in *Franklin*, in the county of *New London*, under the pastoral care of the Rev. Dr. *Nott*, and so continued until his decease in 1838. On the 9th of *March*, 1826, he made and published his last will and testament, of which the following is a transcript : " Know all men by these presents, that I, *Dyer McCall*, of *Franklin*, in the county of *New-London*, considering the mortality of my body, have thought fit, now, in my right mind and memory, to dispose of my worldly goods and estate, by this my last will and testament, in the following manner, *viz.*

" *Item* 1st. I give and bequeath to my beloved wife, *Lucy*, all the right and title that I hold in the farm that I and my wife *Lucy* have a joint deed of from *Eleazer Tracy* of *Franklin*, together with all the stock on said farm, at my decease, with all the house-hold furniture, wearing apparel and farming tools, and one third of all the money and obligations that may be in my possession, at my decease, to be at her disposal forever. I also give unto my wife *Lucy* one third of the use of the farm in the town of *Bozrah*, part of said farm lying in the town of *Franklin*, during her natural life ; and if said farm should be sold, one third part of the interest of the money, which the said farm should sell for, together with the stock of said farm. And if I should buy any lands adjoining or contiguous to the farm that I now live on, my wife *Lucy* to have the improvement of it, during her natural life.

" *Item* 2nd. I give unto the *First Congregational Society*

of the town of Franklin one fourth part of all my estate, not disposed of to my wife Lucy, for a permanent fund, the interest to be appropriated for the support of a Congregational or Presbyterian Calvinistic minister, and the interest not to be appropriated to any other use, or order of men.

"Item 3rd. I give one fourth part of all my estate, not disposed of to my wife Lucy, unto The Missionary Society of Foreign Missions; two thirds to be appropriated for the natives of this land.

"Item 4th. I give one eighth part of all my estate not disposed of to my wife Lucy, to The American Tract Society.

"Item 5th. I give one eighth part of all my estate not disposed of to my wife Lucy, unto The Foreign Mission School at Cornwall, Connecticut.

"Item 6th. I give unto The American Education Society, one eighth part of all my estate that I have not disposed of to my wife Lucy.

"Item 7th. I give all the rest of my estate that I have not disposed of, after my just debts and funeral charges are paid, and suitable monuments are erected at my grave, unto The Society for ameliorating the Condition of the Jews.

"Finally, I do hereby constitute my wife, Lucy McCall, to be my sole executrix of this my last will and testament,— to be paid out of my estate for her cost and trouble."

After the decease of the testator, this will was duly proved and established, by the court of probate. Mrs. McCall declining to act as administratrix, John B. Lathrop was appointed administrator, with the will annexed. His administration account having been duly settled, after notice to all persons interested, the court of probate passed an order of distribution. From this order and others connected with it, Dyer Brewster and others, heirs at law of the testator, and The American Society for ameliorating the condition of the Jews, appealed to the superior court.

No question was made, by any party, as to the gift to The American Education Society; nor as to that to Mrs. McCall, except as to her right to the stock on the farm in Bozrah and Franklin, and as to certain lands, purchased, by the testator, after the date of his will. Mrs. McCall claimed this stock to be her property; and that she was entitled to the use of the after-purchased lands. The other parties in interest claimed,

*New-London, July, 1842.*

Brewster
v.
McCall's
devisees.

New-London,
July, 1842.

Brewster
v.
McCall's
devisees.

that she was entitled only to the use of the stock ; and that, under the will, she took no interest in the lands purchased after its execution, but that they descended to the heirs at law of the testator.   The devise to " *The Mission Society for Foreign Missions,*" and that for " *The Cornwall School,*" were claimed by *The American Board of Commissioners for Foreign Missions ;* no claim having been made thereto, by any other missionary society.

In support of their claim, the *A. B. C. F. M.* offered evidence of the following facts.   In the year 1810, *Samuel Nott,* jr., of *Franklin,* son of the Rev. Dr. *Nott,* and three other members of the Divinity College at *Andover, Mass.,* applied to the general association of that state, offering themselves as missionaries to the heathen.   That association thereupon established a Board of Commissioners for Foreign Missions, consisting of nine members, to be appointed, five by the general association of *Massachusetts,* and four by the general association of *Connecticut.*   These associations were composed of the *Congregational* clergy of those two states, respectively ; and the visitors and officers of the *Andover* Divinity College, were of the same denomination.   In the year 1812, this board was incorporated, by the legislature of *Massachusetts,* by the name of " *The American Board of Commissioners for Foreign Missions,*" for the purpose of propagating the gospel in heathen lands, by supporting missionaries, and diffusing a knowledge of the Holy Scriptures.   The corporation was authorized, by its charter, to " take, have and hold, in fee-simple or otherwise, lands, tenements and hereditaments, by gift, grant, devise or otherwise, not exceeding the yearly value of 4000 dollars ;" and also " to take and hold, by donation, bequest or otherwise, personal estate to an amount the yearly income of which shall not exceed 8000 dollars ; so that the estate aforesaid shall be faithfully appropriated to the purpose and object aforesaid, and not otherwise."

This corporation, ordinarily called *The Foreign Missionary Society,* immediately after it was organized and established, sent out missionaries among the heathen in foreign lands, and the independent tribes of unevangelized *Indians* in our own country ; which missions, they have ever since continued. In the year         this society established a school at *Cornwall,*

New-London,
July, 1842.

Brewster
v.
McCall's
devisees.

in this state, for the education of heathen youth, both *American* and *Asiatic*, to prepare them as labourers in the missionary work. This school was never incorporated, and was discontinued in the year    ; but the board have, at all times since, had under their care, schools established by them, in their *Asiatic* missions, in which heathen youth have been educated, as labourers in the missionary work.

The same year in which the *A. B. C. F. M.* was incorporated, a missionary society for *Norwich* and the vicinity was established, auxiliary to it, which has continued to this time, holding its annual meetings at *Norwich*, and receiving, annually, contributions in aid of the principal society. These meetings were attended by the testator, prior to the year 1826; he having, in the years 1815, 1816 and 1817, been appointed a committee to procure subscriptions. During this period, he, from time to time, contributed to the funds of the society; but in consequence of the loss of the treasurer's book of receipts, prior to the year 1826, the particulars of his contributions did not appear. In the year 1826, he paid to the treasurer of the society, the amount of the annual subscription required of its members.

During the last-mentioned year, a *Gentlemen's Missionary Association*, auxiliary to the *A. B. C. F. M.*, was established at *Franklin*, of which the testator was, for that year, and for several successive years, the treasurer and a collector.

For many years, both before and after the making of the will, there was, in *Franklin*, a *Female Missionary Association*, auxiliary to the *A. B. C. F. M.*, of which Mrs. *Lucy McCall*, the wife of the testator, was the treasurer and a collector.

To the admission of this evidence, and all other evidence offered by the *A. B. C. F. M.*, for the purpose of showing the intention of the testator, and explaining the provisions of the will, the appellants objected.

At the date of the will, there were, in the *United States*, the following missionary societies; and it did not appear from the evidence, that there were any others.

1. " *The General Convention of the Baptist denomination in the United States, for Foreign Missions, and other important objects relating to the Redeemer's Kingdom*," incorporated, under the laws of the state of *Pennsylvania*, in 1821. This society has established missions among foreign nations, and

among the *Indian* tribes of the *American* continent, which have been, for many years, in existence. There was no evidence, that, at the date of the will, there was, in this state, any association or society, auxiliary thereto; or that the testator was, at any time, connected with said convention, or ever contributed to the funds thereof.

2. " *The Missionary Society of the Methodist Episcopal Church,*" organized in the year 1819, and incorporated, by the legislature of the state of *New-York*, in 1839. This society has established missions among foreign nations, and the *Indian* tribes of this continent.

3. " *The Domestic and Foreign Mission Society of the Protestant Episcopal Church in the United States of America,*" established in 1820, but never incorporated. This society is under the charge of *The Protestant Episcopal Church,* in the *United States.*

4. " *The Board of Foreign Missions of the Presbyterian Church,*" having no distinct act of incorporation, but under the charge of *The General Assembly of the Presbyterian Church,* in the *United States.*

In the year 1816, " *The New-England Tract Society,*" established at *Boston*, was incorporated, under that name, by the legislature of *Massachusetts.* In *June*, 1823, the name of this corporation was, by the same legislature, altered to that of " *The American Tract Society.*" In the year 1824, the Rev. Dr. *Nott* of *Franklin*, was, by a donation from Mrs. *Lucy McCall*, the wife of the testator, constituted a life member of this society.

At a public meeting, held in the city of *New-York*, in *May*, 1825, a society was organized, called " *The American Tract Society,*" with which, in that year, a union was formed, by the society in *Boston*, as auxiliary to the latter, transferring to it its stereotype plates. Both societies have since continued their operations, in distributing and selling the same tracts and publications, acting under the same name, but retaining each its distinct organization. The society in *Boston* has, from time to time, contributed to the society in *New-York*, from its surplus funds; and the latter has furnished the former with tracts and other publications, printed by the society in *New-York*. This latter society was incorporated, by the legislature of the state of *New-York*, in 1841. The amount con-

tributed to the society at *Boston* from persons residing in *Connecticut*, has been small; and no auxiliary thereto was ever established in *Franklin*. In the years 1825 and 1826, eleven societies were formed in the counties of *Windham* and *New-London*, auxiliary to *The American Tract Society in Boston*, one of which was in the town of *Norwich*. After the organization of the society at *New-York*, the *Connecticut* branch at *Hartford*, and tract operations generally throughout *Connecticut*, became connected with the society in *New-York;* it being more convenient to procure their tracts there. The society of *Norwich* and the vicinity was recognized as an auxiliary, in the year 1828, though it made a purchase of tracts from that society in 1827. The state of *Connecticut* and part of *Massachusetts*, have been embraced in the field of operations of the *New-York* society, and the rest of *New-England*, in that of the society of *Boston :* and the agencies for the collection of funds have been established, in a similar manner, and by a similar arrangement. The testator, from time to time, after the date of his will, contributed to the funds of the *New-York* society; and shortly before his death, he became a life member thereof.

In the year 1820, a society was incorporated, by the legislature of the state of *New-York*, by the name of " *The American Society for ameliorating the condition of the Jews;* and there was no evidence before the court, that any other society for a like purpose, was ever formed in this country.

The appellants claimed, that *The American Board of Commissioners for Foreign Missions* were not entitled to any share of the estate under the will; and further, that the devise and bequest of " the two thirds to be appropriated for the natives of this land," was void, and could not be holden by said board, because not in accordance with the provisions of their act of incorporation. They further claimed, that it does not appear from the terms of the will, or in any other manner, that the testator intended to give any part of his property to *The American Tract Society in Boston*, the only claimants of the share given to *The American Tract Society*. The heirs at law claimed, that they were entitled to receive that portion. They also claimed, that in case any of the devises or bequests were void or inoperative, for any cause,

*New-London,*
*July, 1842.*

Brewster
*v.*
McCall's
devisees.

they were entitled to them. *The American Society for ameliorating the condition of the Jews* claimed, that they were entitled to them, as residuary devisees and legatees.

The case, embracing these facts, was reserved for the advice of this court, on the following questions of law.

1. Do the lands purchased by the testator, subsequent to the execution of his will, or any of them, pass by the will, or do they descend to his heirs at law ?

2. What interest does Mrs. *McCall,* the widow, take in the stock on the farm lying in *Bozrah* and *Franklin*—an absolute interest, or one for life only ?

3. Are *The American Board of Commissioners for Foreign Missions* entitled, under the will, to a share of the estate ; and if so, what share ? The evidence offered by them, and objected to, by the heirs, to be taken as part of the case, if legally admissible, but otherwise not.

4. Is the gift to " *The American Tract Society,*" void ? And if not, which society takes ?

5. Is the gift to the " *Foreign Mission School at Cornwall,*" void ? And if not, who are entitled to it ?

6. Is *The American Society for ameliorating the condition of the Jews* entitled, under the will, to a share of the estate ? And if so, what part ?

*Bissell* and *Rockwell,* for the heirs at law, remarked, as a preliminary proposition, That the heir at law will not be disinherited by a will, except by express words, or necessary implication. 6 *Cruise's Dig.* 173. n. 1. 2 *Bla. Com.* 381. n. 23. per. *Chitty. Doe.* d. *Vesey* v. *Wilkinson,* 2 *Term Rep.* 210. 214. per *Grose,* J. *St. John* v. Bishop of *Winton, Cowp.* 94. *Jackson* d. *Bogert* & al. v. *Schauber,* 7 *Cowen* 187. 197. *Schauber* v. *Jackson* d. *Bogert* & al. in error, 2 *Wend.* 13. *Grazt's* lessee v. *Ewalt,* 2 *Binn.* 95. 99. They then contended,

1. That the testator's land acquired after the execution of the will, did not pass by the devise ; and this applies as well to the life estate to Mrs. *McCall,* as to the other after-acquired property. A devise is a conveyance of land by purchase, and will only transfer such land as the devisor owned, at the time of making it. 6 *Cruise's Dig.* 38. 1 *Sw. Dig.* 136. *Bunter* v. *Coke,* 1 *Salk.* 237. *Jackson* d. *Rogers* v·

*Potter,* 9 *Johns. Rep.* 312. *McKinnon* v. *Thompson,* 3 *Johns. Chan. Rep.* 307. 310. *Livingston* & al. v. *Newkirk* & ux. 3 *Johns. Chan. Rep.* 312. *Bridges* v. *Duchess of Chandos,* 2 *Ves. jun.* 427. 428.

The statute of this state, passed in 1831, does not vary the rule. For, in the first place, the will was executed *prior* to the passage of the law. Secondly, the terms of the statute are plainly *prospective.* Thirdly, if otherwise, courts will not construe a statute to be retrospective in its operation, unless it is so in express terms. *Goshen* v. *Stonington,* 4 *Conn. Rep.* 210. *The Thames Manufacturing Company* v. *Lathrop,* 7 *Conn. Rep.* 550. *Perkins* v. *Perkins,* 7 *Conn. Rep.* 558. 563. 556. *Dash* v. *Van Kleeck,* 7 *Johns. Rep.* 506. Fourthly, the provisions of this statute only give the *authority* to make such a devise, by the use of express terms—a right not before possessed. *Smith* & al. v. *Edington,* 8 *Cranch* 66. 69, 70.

2. That Mrs. *McCall* is entitled only to a life interest in one third of the stock on the farm in *Bozrah* and *Franklin,* or of the money for which it is sold. Such, in the first place, is the fair construction of the clause in the will. It could not be the intention to give her " *one third* of the use of the farm," and *all* the stock on it,—the former " during her natural life," and the latter without limitation. Secondly, in the first devise of the interest of the farm on which he lived, he also bequeathes, very naturally, " *all* the stock on said farm at my decease, with *all* the household furniture, wearing apparel and farming tools, and *one third* of the money and obligations, that may be in my possession at my decease, to be at her disposal forever."

3. That the devise in the third clause, to " *The Missionary Society for Foreign Missions,*" must fail. In the first place, the devise of the two thirds, " for the natives of this land," cannot be received by the *A. B. C. F. M.,* because by their charter, their objects are defined to be in aid of " *foreign missions,*" and for the purpose of propagating the gospel in foreign lands, by supporting missionaries, and diffusing a knowledge of the Holy Scriptures ;" and they are authorized to hold lands, &c., by devise, " so that the estate aforesaid shall be faithfully appropriated to the purpose and object aforesaid, and not otherwise." This corporation, like all

others, has no powers, except those conferred on it, by the terms of its charter; which are to be strictly construed. *Fuller* v. *Plainfield Academy,* 6 *Conn. Rep.* 545. *Head & al.* v. *Providence Insurance Company,* 2 *Cranch* 127. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 636, 7. *Beaty* v. *Knowles'* lessee, 4 *Pet.* 152. 168. *Beaty* v. *Marine Insurance Company,* 2 *Johns. Rep.* 114. *Life and Fire Insurance Company* v. *The Mechanics Fire Insurance Company of New-York,* 7 *Wend.* 31. *North River Insurance Company* v. *Lawrence,* 3 *Wend.* 482. It is only by *sufferance,* that this corporation can receive, in any case, any devise of land out of *Massachusetts. Runyan* v. *Costar & al.* 14 *Pet.* 122. Secondly, the natives of this land, whether considered as meaning the native inhabitants of the country, or the *Indian* tribes of this continent, are not natives of "heathen lands." These tribes are not, in any sense, foreign nations. *Cherokee Nation* v. *The State of Georgia,* 5 *Pet.* 1. 16. & seq. *Worcester* v. *The State of Georgia,* 6 *Pet.* 515. Thirdly, the *A. B. C. F. M.* cannot take the property *as trustees,* there being no power conferred by the charter. *Jackson* d. *Lynch* v. *Hartwell,* 8 *Johns. Rep.* 330. *Greene* v. *Dennis,* 6 *Conn. Rep.* 292. Fourthly, there is no such society as the "*Missionary Society for Foreign Missions ;*" and the *A. B. C. F. M.* cannot, by parol proof, show, that such was the intention of the testator. The case falls plainly within the reason, as well as the terms of the rule, which declares, that parol evidence cannot be admitted to vary or explain a written instrument. If, on the face of the instrument, the words are uncertain, the devise is void. The maxim *falsa demonstratio non nocet,* &c. is the only qualification of this rule ; and the meaning of that maxim is, that if there be a true and sufficient description of the estate devised or of the devisee, it is not impaired, by a false description connected with it. *Thomas* v. *Thomas,* 6 *Term Rep.* 671. *Jackson* v. *Sill,* 11 *Johns. Rep.* 201. 218, 19, 20. *Andrews* v. *Dobson,* 1 *Cox's Rep.* 425. *Jackson* d. *Houseman* v. *Hart,* 12 *Johns. Rep.* 77.

4. That the devise in the fourth clause to "*The American Tract Society,*" must fail. The ambiguity here arises, not from any incorrect description in the will, but from the fact that there are two societies of the same name. The only society claiming the devise, at this time, or which is a party

to this suit, is the society at *Boston;* but it is apparent from *New-London,*<br>July, 1842. the proof, that the testator intended to devise the property to the society at *New-York.* If not, the devise is void, from uncertainty.

Brewster<br>*v.*<br>McCall's<br>devisees.

5. That the devise in the fifth clause to *"The Foreign Mission School at Cornwall,"* must also fail. It is conceded, in the first place, that *The Foreign Mission School at Cornwall,* if in existence, could not take by this devise. But there is no such institution. Secondly, there is no principle upon which the *A. B. C. F. M.* can obtain this legacy. It would be, in the most objectionable sense, *making* a will for the testator. Thirdly, it does not appear, that the testator ever *knew* that there was any connexion between the *Foreign Mission School at Cornwall* and the *A. B. C. F. M.* If he had intended to place the property in their charge, he would have done so expressly, in the third clause, in which he mentions " the natives of this land." Fourthly, it is equally clear, that he did not intend to give it to the *A. B. C. F. M.,* to send to the *Asiatic* school.

6. That " *The American Society for ameliorating the condition of the Jews,"* cannot take, by this devise. The grant is not made to them, by their corporate name ; and there is no proof, that that was the society intended by the words of the will. No case can be found, where a devisee, whether a corporation or a natural person, claimed to be the party intended by a devise, but not correctly described, has, in the absence of proof of his or their being the party intended, been allowed to take by the devise. The correct description of the name of a corporation, is even more important than of the name of an individual.

7. That on the failure of any of the previous devises, the land described will go to *the heirs at law,* and not to the residuary devisee. *Durour* v. *Motteux,* 1 *Ves. sen.* 322. *Jones* v. *Mitchell, Sim. & Stu.* 290. *Gibbs* v. *Rumsey,* 2 *Ves. & Bea.* 294, 297. *Van Kleeck* v. *Dutch Church of N. York,* 20. *Wend.* 457. 469. *Lingan* v. *Carroll,* 3 *Harr. & McHen.* 333. *Green* v. *Dennis,* 6 *Conn. Rep.* 292. *Doe* d. *Wells* & al. v. *Scott* & al., 3 *Mau. & Sel.* 300. *Hayden* v. *Stoughton,* 5 *Pick.* 528. 6 *Cruise's Dig.* 34. *Fearne Cont. Rem.* 537.

8. That if the " *Society for ameliorating the condition of*

the Jews," can take any portion of the estate, the funeral charges, monuments and expenses of settling the estate, should be deducted from their proportion.

*Foster*, for *The American Society for ameliorating the condition of the Jews*, contended, that this society were entitled under the will,

1. To one eighth of the real estate which belonged to the testator, at the time of executing the will, deducting those portions which were given to the widow; seven eighths being otherwise disposed of. Also, to one eighth of all the personal estate, except stock on the *Franklin* farm, household furniture, &c., and one third of all his money and obligations.

2. To the fee in the lands given to the widow for life—one third of the *Bozrah* farm. The fractional interest given by the other devises, are exclusive of the portion given to the wife; and this falls within the residuary clause.

3. All the devises that fail of taking effect, on account of being void *ab initio*, go to the residuary devisee, and not to the heirs at law. The difference between these and lapsed legacies, is well defined. A lapsed legacy is one, which, at the time of making the will, is inchoate and good, but is subsequently frustrated. *Lovelass on Wills*, 240. [449.] *Doe* lessee of *Stewart* v. *Sheffield*, 13 *East*, 526. *Hayden* & al. v. *Stoughton*, 5 *Pick*. 528. 536.

The result is, the devise to the *Cornwall* school falls into the *residuum;* that to the Tract Society, is void for uncertainty; that to the Missionary Society must also fail—at all events, two thirds of it; and the stock given to Mrs. *McCall*, subject only to her interest in it.

*Strong*, for Mrs. *McCall*, the *A. B. C. F. M.* and *The Massachusetts Tract Society*, contended, 1. That the will gives to Mrs. *McCall* the stock on the *Bozrah* farm, as her own property; and not one third of the use of this stock. It is to be remarked, in the first place, that there is nothing to connect the words, " together with the stock on said farm," with the words " one third of the use." Secondly, this construction results from the nature of the property, which is constantly changing and perishable. Sixteen years have now elapsed since the date of the will. Thirdly, there is

New-London,
July, 1842.

Brewster
v.
McCall's
devisees.

provision made for the sale of the farm, but none for the sale of the stock belonging to it. Fourthly, if Mrs. *McCall* was to have one third of the use of the stock, the other two-thirds of this use must belong to some other of the devisees in the will. The character of these bequests repels the idea that the testator intended such a disposition of this property.

2. That Mrs. *McCall* is entitled, during her life, to the use of the after-purchased lands, adjoining or contiguous to the *Franklin* farm. First, such is the clear and express intent of the testator; and there is no rule of law to defeat that intent. Secondly, the rule as claimed on the other side, is derived from the *English* statute, which provides, that " any person *having* lands," may dispose of them by will. By our statute, the power is very differently conferred, and in the same terms as to real and personal estate. All persons of the age of twenty-one, &c. *shall have power to dispose of their real estate*, &c.: all persons of the age of seventeen years &c., *shall have power to dispose of their personal estate*, &c. *Stat.* 226. *tit.* 31. *c.* 1. *s.* 1. (ed. 1838.) Thirdly, the act of 1831 may be regarded as *declaratory* of what the law then was. It provides, that " any person having power to dispose of real estate, by will or testament, *may*, by such will or testament, devise real estate not owned by him, at the time of making the same, but acquired afterwards." *Stat.* 245. (ed. 1838.) Fourthly, if not to be so regarded, as to wills which had taken effect before its passage, it is sufficient to give effect to wills then existing, containing such express provision. Ffthly, it is to be considered, that this question can arise only between Mrs. *McCall* and the heirs at law; for if Mrs. *McCall* cannot take, neither can the residuary devisees.

3. That the *A. B. C. F. M.* are entitled to receive the bequest contained in the third clause of the will. This is not a question between two devisees claiming the same portion of the estate; but whether this, the largest devise contained in the will, shall be altogether defeated, by reason of its uncertainty. In the first place, it is not necessary that the corporate name of the society should he given in the will, if the real object of the testator's bounty can be ascertained. The name used in the will corresponds very nearly with that in

HARVARD LAW LIBRARY

common use.   *A. & Ames on Corp.* 55.   Secondly, the *A. B. C. F. M.* was, at the date of the will, the only incorporated missionary society, which united the two objects of missions to the natives of our own land, and the heathen of foreign lands,—unless the *Baptist General Convention* be an exception.   But the latter society clearly was not intended ; for there is no proof that the testator *knew* of its existence, or that it had any organization in this state.   It was of another denomination, which was excluded by his bequest to the ecclesiastical society in *Franklin.*   Thirdly, this was a foreign missionary society of the denomination to which the testator belonged.   Fourthly, he was an officer connected with its auxiliary and its association, (as was Mrs. *McCall,* his wife.)   Fifthly, one of the first missionaries of this society was from the church of which he was a member and deacon.   Sixthly, he was a contributor to the funds of this society, both before and after the making of the will.   Seventhly, this is further confirmed, by the appropriation of one eighth of his property, to the missionary school of this society.

4. That the *A. B. C. F. M.* are entitled to the bequest of the one eighth given to the *Cornwall* school, though the school itself, not being incorporated, could not take.   In the first place, this bequest would have been good in *England,* under the statute of the 43 *Eliz. c.* 4. regulating bequests to charities, and will be sustained under the statute of this state, *tit.* Lands, *c.* 1. *s.* 3.   Secondly, suppose a bequest to the divinity school in *Yale-College,* this would not be regarded as void.   Though the divinity school could not take, as a corporation, yet the corporation of *Yale-College* would take for the use of the divinity school.   Thirdly, it is no objection to the validity of this bequest, that the school had been discontinued, before the death of the testator.   It may have been discontinued, for the want of these very funds, which the testator knew to be needed, and which he designed to supply.   Fourthly, if *this* school could not be revived, yet this bequest for the charity would not be void, but might be executed *çy pres.* 2 *Roper on Leg.* 156. seq.

5. That *The American Tract Society,* incorporated by the state of *Massachusetts,* are entitled to the legacy of " one eighth to *The American Tract Society.*"   First, they are incorporated, by this name, with power to receive and hold this

bequest. Secondly, though at the date of this will, there *New-London,* July, 1842. may have been another society organized under this name, yet it had no corporate power or existence, and could not receive or claim this legacy. Suppose a devise of lands to *A. B.;* and there are two of that name, one a citizen, the other an alien; would not the former take? Thirdly, these two societies are united in the same objects, prosecuted in the same manner, and are mutually coöperating. The practical result is the same, whichever society receives the bounty. Shall the existence of the unincorporated society, defeat the bequest to the society which has power to take?

<div style="text-align:right">

*Brewster*
*v.*
*McCall's*
*devisees.*

</div>

6. That if *The American Society for ameliorating the condition of the Jews,* can take the remaining one eighth of the estate given by the will, they cannot claim any devise, if such there be, which is invalid as to the other devisees. *Greene & al. v. Dennis,* 6 *Conn. Rep.* 292. *Van Kleeck v. Dutch Church of New-York,* 20 *Wend.* 457. *Lingan v. Carroll,* 3 *Har. & McHen.* 333. From the part of the estate given to the latter society, are to be defrayed the debts, funeral charges, and expenses of the monument. Are not the expenses of settling the estate, also, to be deducted from this portion of the estate?

STORRS, J. The questions presented for our advice will be considered in the order in which they have been reserved.

1. Do the lands purchased by the testator subsequent to the execution of his will, or any of them, pass by the will, or do they descend to his heirs at law?

It has long been the settled construction of the *English* statute of wills, that a devise of lands operates only on those lands which the testator owned at the time of executing and publishing his will, and that no after-purchased lands will pass under such devise, unless subsequent to the purchase, the devisor re-publishes his will;—(2 *Blk. Com.* 378. 6 *Cruise's Dig.* 38.) although the devise is expressly of all lands which the devisor should have, at the time of his decease. *Bunter v. Coke,* 1 *Salk.* 237. This construction has not arisen from the particular phraseology of that statute, which says, that " any person *having* lands &c. may devise," as is suggested, by the counsel for one of the devisees in this case, but from the character of the instrument; it being considered to be

in the nature of a conveyance or appointment of a specific estate. Such is the view most explicitly taken of it, by Lord Chancellor *Loughborough*, in *Brydges* v. *The Duchess of Chandos*, 2 *Ves. jr.* 427., and by Lord *Mansfield*, in *Harwood* v. *Goodright*, *Cowp.* 90. Although our statute is not couched in the very words of the *English* statute, the language being that " all persons of the age of twenty-one, &c., shall have power to dispose of their real estate," &c.; yet the object of it was the same; and there is no such diversity as to justify a different construction. Accordingly, we find that the late Ch. J. *Swift*, in his *Digest*, *vol.* 1. 136. lays down, without remark, the law on this point as it is found in the *English* cases. In *New-York* also, and indeed generally, the same construction prevails. *Jackson* d. *Rogers* & al. v. *Porter*, 9 *Johns. Rep.* 312. *Livingston* & al. v. *Newkirk*, 3 *Johns. Chan. Rep.* 312. *Minuse* & al. v. *Cox* & al. 5 *Johns. Chan. Rep.* 441. *Ballard* & al. v. *Carter*, 5 *Pick.* 112. 114. *Carter* & ux. v. *Thomas*, 4 *Greenl.* 341. 342. 4 *Kent's Com.* 498.

The claim which has been made, that our statute of 1831 is merely declaratory of the then existing law, and therefore requires a broader construction than it had before received, is not well founded. That statute provides, that " any person, having power to dispose of real estate, by will or testament, may, by such will, devise real estate not owned by him at the time of making the same, but acquired afterwards." *Stat.* ed. 1838. *p.* 245. It is obvious, that it was the object of this statute to remedy, a defect in the existing law, and to extend the power of devising further than previously allowed. 4 *Kent's Com.* 499.

It is, however, insisted, that, although the will now in question was executed several years prior to the passing of the act of 1831, that act operates upon it, so as to give validity to the provisions it contains in respect to the after-acquired estate of the testator. The general rule is, that statutes shall not be construed retrospectively, unless by their express terms or otherwise, such appears to be the manifest intent of the legislature. *Goshen* v. *Stonington*, 4 *Conn. Rep.* 210. *Perkins* v. *Perkins*, 7 *Conn. Rep.* 558. *Jackson* d. *Sherwood* v. *Phelps*, 3 *Caines* 62. 69. Here there is nothing from which we have a right to infer, that it was intended to affect any wills which had been executed prior to the passing of the

*New-London,*
July, 1842.

Brewster
*v.*
McCall's
devisees.

act. Therefore, the lands purchased by the testator, subsequent to the execution of the will, do not pass by it, but descend to his heirs at law.

2. On the question, as to what interest the widow of the testator takes in the stock on the farm lying in *Bozrah* and *Franklin,* we are of opinion that she is entitled to an absolute interest, and not an estate for life only. The testator gives to her, not the one third of the use of the farm and the stock, during her natural life; nor the one third of the use of the farm, during her natural life, and of the stock; but one third part of the use of the farm, during her natural life, and, if sold, one third part of the interest of the money which it should sell for, "together with the stock of said farm." This would seem to indicate that the property itself, and not a qualified or temporary interest in it, was intended to be given; and, considering the precarious and temporary nature of the property; that the reversionary interest in it would be of but little value; and that it would probably promote the accommodation of the occupant to be able to dispose of it at pleasure, that intention is believed to be rendered quite obvious. Limitations of the mere use of personal property with reversions and remainders over, although allowed, are certainly not to be favoured: it is with reluctance that they have been sanctioned by our courts, and they will lean against the creation of them, either by deed or will, unless by expressions that are clear and definite. There is certainly no such plain manifestation of an intention to create an estate in this case.

3. Is the corporation incorporated by the name of " *The American Board of Commissioners for Foreign Missions,*" entitled, under the will in question, to a share of the estate of the testator; and if so, to what share?

The devise is of " one fourth part of all [his] estate not disposed of to [his] wife, to *The Missionary Society of Foreign Missions.*"

There is no ground for the claim which has been made, that this devise is void on its face for uncertainty as to the devisee intended. Whatever doubt there may be, in this case, as to the person intended, such doubt does not arise from any expressions in the instrument, which are of themselves so equivocal, obscure, uncertain, contradictory or un-

New-London,
July, 1842.

Brewster
v.
McCall's
devisees.

meaning, that they are not susceptible of being understood and applied ; nor does the extrinsic evidence in the case disclose such facts as render it impossible to ascertain the meaning of the language used by the testator. It is not, therefore, a case of what is termed *patent ambiguity*, which exists, when, in the language of *Roberts*, " an ambiguity is produced, by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful or smothered sense, without adding ideas which the actual words will not of themselves sustain." *Roberts on Frauds*, 15. As, for instance, where a testator devises to " one of the sons of *J. S.*," who has many sons ; (*Strode* v. *Russel* & al. 2 *Vern.* 621. 624, 5. *Dowset* v. *Sweet, Amb.* 175. *Buggins* v. *Yates*, 9 *Mod.* 122.) or where a blank is left for the name of the devisee ; (*Hunt* v. *Hort*, 2 *Bro. Ch. Rep.* 311. *Baylis* & al. v. *The Attorney-General*, 2 *Atk.* 239.) or where the devisor, after bequeathing his lands to his wife for her life, and after her decease, to *M. D.*, the niece of his wife, proceeds thus : " I give the use of 500*l.* stock, for *her* natural life, but after *her* decease, I give the 500*l.* among my wife's brothers and sisters." *Castledon* v. *Turner*, 3 *Atk.* 257.

It is however insisted, that in this case, the evidence proves, that there is no such corporation or society in existence as *The Missionary Society of Foreign Missions ;* and therefore, that the devise is inoperative. If indeed there were no society in existence either of this name or description, the devise would be void, for the want of any person to take under it. If, however, there is a corporation of either that name or description, and only one, we think there cannot be a doubt that it would take under this devise. Under the circumstances of this case, the devise must be deemed to be made to that society, by *description*, and not by *name*. The evidence shews, that there is no society bearing the name of " *The Missionary Society for Foreign Missions ;*" but that there are several, whose objects and character are correctly described by those words, considered as words of description ;— and there is nothing in the will to shew, that the testator intended to designate any particular society by name. A devise is never to be construed absolutely void for uncertainty, but from necessity : if it be possible to reduce it to a certainty,

the devise is to be sustained, *Ut res magis valeat quam* *New-London,*
*July, 1842.* *pereat. Powell on Devises,* 421. There is no rule applica- Brewster
*v.*
McCall's
devisees. ble to devises, which requires the name of the devisee to be mentioned: it is only necessary that the description of the devisee be by words that are sufficient to denote the persons meant by the testator, and to distinguish them from all others. *Nihil facit error nominis, cum de corpore constat.* 6 *Cruise's Dig.* 207. 4 *Id.* 314. And indeed, it is true of much the greatest proportion of devises, that the objects of them are designated by description, rather than by name. In *Rivers'* case, 1 *Atk.* 410. Lord *Hardwicke* said, " In the case of a devise, any thing that amounts to a *designatio personæ* is sufficient." *Beaumont* v. *Fell,* 2 *P. Wms.* 141. *Bartlett & al.* v. *King,* exr. 12 *Mass. Rep.* 537. 541. *Ram on Wills,* 49, 50. *Pow. Dev.* 337. It is very obvious, in the present instance, that the testator intended, as the object of this devise, some society which was devoted to the object of foreign missions; and it is not singular that he should have described it by its occupation. And no substantial reason is perceived, why such a description is not as available, in the case of a corporation, as of a natural person. It is sufficient in both cases, if the intention of the testator can be discovered, by the language he uses, in connexion with such evidence as is proper for the purpose of applying it. It might perhaps fairly admit of a question, under the more modern decisions on this subject, whether the corporation now claiming under this devise, is not sufficiently designated in it by name; the strictness which was anciently required in setting forth the names of corporations in grants and devises, having been very much relaxed, and more reasonable rules adopted. Case of the Mayor &c. of *Lynn Regis,* 10 *Coke* 123. *Finch's* case, 6 *Coke,* 64. 6 *Cruise's Dig.* 216. *Angel & Ames,* 55. It is not, however, necessary to decide this point.

It appearing, from the testimony in the case, that there are several societies pursuing the same object as that of the society mentioned in this devise, and which were in existence when this will was executed, it becomes necessary to ascertain which of them was intended by the testator. That parol testimony is admissible for this purpose, does not admit of doubt. It is the case of *a latent ambiguity,* raised by the parol evidence, which discloses the fact that there are several

such societies, and which therefore may be removed, by the same species of evidence : for it is a familiar rule, that a latent ambiguity, that is, an ambiguity arising from extrinsic evidence, may be removed by extrinsic evidence. And, as remarked by *Starkie,* (*Ev. pt.* 4. *p.* 1021.) the illustration most usually given of the operation of this rule, is that of a description in a will of a devisee, or of an estate, where it turns out that there are two persons or two estates of the same name and description. The cases in support of this principle are so familiar, that it is only necessery to refer to them. *Jones* v. *Newman,* 1 *Bla. Rep.* 60. Lord *Cheyney's* case, 5 *Co.* 68. *Edward Altham's* case, 8 *Co.* 308. *Hampshire* v. *Peirce,* 2 *Ves.* 216. *Partridge* v. *Strange* & al. 1 *Plowd.* 85. *b. Sargent* & al. v. *Towne,* 10 *Mass. Rep.* 303. 307. *Rob. Frauds, b.* 1. *c.* 2. *Bac. El. rule* 23.

Looking at the facts found in this case, which may reasonably be presumed to have influenced the testator in the devise in question, especially in connexion with the light which is reflected on the subject, by the other parts of the will, there can be no serious doubt that *The American Board of Commissioners for Foreign Missions,* was the corporation which he intended as the object of his bounty. With regard to the missionary society of the *Methodist Episcopal Church,* the *Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the U. S. A.* and the *Board of Foreign Missions of the Presbyterian Church,* the two last were never incorporated, nor was the first until after the execution of the will. They were, therefore, incapable of taking the benefit of a devise under it. *Greene* v. *Dennis,* 6 *Conn. Rep.* 292. That circumstance, of itself, is sufficient, in this case, to set aside any claim that they make. For where there are several societies answering the description of that mentioned in the will, some of which are capable of taking and others not, the law presumes that the testator intended the former, rather than the latter. And there is nothing in this case, which in the least controuls or weakens that presumption. The question, therefore, is between the " *American Board of Commissioners for Foreign Missions,*" and " the *General Convention of the Baptist denomination in the United States for Foreign Missions*" &c. Both of these societies were incorporated, at the time of the making of the will ; and their

New-London,
July, 1842.

Brewster
v.
McCall's
devisees.

general objects are the same, and such as to fall within the description of the society mentioned in this devise. In these respects, their claims are equal. There are no other facts to shew that the *General Baptist Convention* was contemplated, by the testator, when he made his will. But there are circumstances, which, we think, prove most satisfactorily, that the *A. B. C. F. M.* was the society he then had in view. At the time of executing his will, as well as for many years previously, he was intimately connected with the *A. B. C. F. M.,* by being a prominent and active member of one of its auxiliary societies, which was established in the vicinity of the place where he resided, the same year in which the parent board was incorporated, and continued during the life of the testator. The object of this society was to aid the principal society, by raising contributions to its funds. He attended the regular annual meetings of that society; was appointed and officiated, as early as 1815, and for the two successive years, as one of its officers, in the capacity of committee to procure pecuniary subscriptions; and during this period, from time to time, himself contributed to its funds. In 1816, he paid to the treasurer of the society the amount of the annual subscription required of its members. During the same year, an association of gentlemen auxiliary to the same parent society, was established at the place where he resided, of which, for that and several successive years, he was the treasurer and a collector: and for many years both before and after the making of his will, there was also a female association, auxiliary to the same society, of which his wife was the treasurer and a collector. These circumstances shew, conclusively, that the parent society and its objects were very near his heart; and it is much more rational to believe, that an enterprise, which he had so long and uniformly remembered and cherished by his varied beneficence, would not be forgotten or abandoned, at the moment when he was selecting the final objects of his bounty, than that he should devote that bounty to those for whom he had never manifested any particular regard, with whom he never was in any manner connected, and for whom, it is not to be supposed that his sympathies would be so strongly excited. It is also proper, in ascertaining the motives by which he was probably influenced, to take into consideration the fact that his religious sentiments

accorded with those under whose patronage the *American Board* was conducted ; and that those sentiments would naturally induce him to prefer that society, as the distributor of his bounty, to those whose object it was to disseminate different views. This conclusion is strengthened, by the character of the devises for other benevolent objects contained in the will, (to the whole of which it is proper to look, in ascertaining the meaning of any one in particular,) in which, it will be seen, that he has generally selected such objects as would be the means of diffusing his own particular religious opinions. With respect to the other society, it was not only established by a denomination of *Christians* to which he did not belong, but it does not appear that it operated, or had any organization, within this state ; nor indeed, that the testator knew of its existence. We are therefore satisfied, that the *A. B. C. F. M.* was the person intended by this devise.

It is claimed, however, that this devise is void as to two thirds of the bequest, because it is directed " to be appropriated for the natives of this land ;" which, it is insisted, the *A. B. C. F. M.* has no power, by its charter, to do. Whether if this were so, it would render the devise, as to that part, absolutely void, it is not necessary to consider ; because no doubt is entertained, that the propagation of the gospel among the *aborigines* of this country, is one of the objects for which that society was instituted, and clearly within the powers conferred upon it. It is incorporated " for the purpose of propagating the gospel in *heathen lands.*" That expression embraces every portion of the world, the inhabitants of which are destitute of revelation, and is strictly applicable to the *Indians* on this continent. They are emphatically *heathen ;* and as completely isolated, in a religious view, from the *Christian* portions of our country, as the *Hottentots* of *Africa.* The word " *lands*" is here used, not with reference to their location, but to the religious character of their people. It is true, that the *Indian* tribes of our country are not, for certain purposes, foreign nations ;— but it does not result, that a religious mission among those tribes may not be a foreign mission : such missions are undoubtedly *foreign*, as contra-distinguished from *domestic ;* and in this sense the term is used. There is no reference, however, in the charter to

*foreign*, but only to *heathen* lands : nor are either " *nations*," <span style="float:right">*New-London,* July, 1842.</span> or " *foreign nations*," mentioned.

<div style="float:right; text-align:center">Brewster<br>*v.*<br>McCall's<br>devisees.</div>

4. " *The American Tract Society*" established at *Boston*, and not that at *New-York*, is entitled to the bequest which is given to the society of that name. The former was incorporated before the execution of the will, and therefore capable of receiving the bequest. The latter was not incorporated until afterwards, and after the death of the testator, and had no capacity to take. 6 *Conn. Rep.* 292. 4 *Wheat. Rep.* 1. It appears, moreover, that in 1825, the society in *New-York*, became united to that in *Boston*, as an auxiliary to it, by which it became merely one of its branches or constituent parts.

5. With respect to the devise to " the *Foreign Mission School at Cornwall, Conn.*" it is conceded, that it is void, as that school was not, at the time of the execution of the will, and has never since been, in existence ; unless it must be deemed to be made to the *A. B. C. F. M.* Although the school was established, by that corporation, it is no part of its constitution, and was only one of its means of operation, which it finally abandoned. If it was the intention of the testator to give that society the benefit of this devise, no reason is perceived why he did not include it in the other devise to that society, in the same manner as he set apart two thirds of that devise for the *aborigines* of this country. The *A. B. C. F. M.* are not entitled to take under this devise. Whether a trust is created by the devise, which a court of chancery will protect, by compelling the legal owner to fulfil it, in any form, or supplying a trustee for its execution, it is not necessary here to enquire, as the question before us relates only to the legal title.

6. " *The American Society for ameliorating the condition of the Jews*," is, beyond doubt, intended in the last devise. Its object is most accurately described in it ; it was, at the time of making the will, and still is, incorporated ; and no other society for a similar purpose, appears ever to have been formed in this country.

7. The devise to the *Cornwall School* having failed, a question is made, whether that portion of the estate vests in the last-mentioned society, which is the residuary devisee, or

<div style="margin-left:note">
*New-London,*
*July, 1842.*
———
Brewster
*v.*
McCall's
devisees.
</div>

in the heirs of the testator.   That point was deliberately settled, in the case of *Greene* & al. v. *Dennis,* 6 *Conn. Rep.* 292. where it was held, that the subject of the devise descended to the heirs at law, and did not go to the residuary devisee ; and there is no occasion for reviewing that decision.   The same question has since undergone an elaborate examination in the state of *New-York,* and been similarly decided, in the case of *Van Kleeck* v. *The Dutch Church of New-York,* 20 *Wend.* 457.   The authorities and reasoning on the subject are so fully gone into, in those cases, and also in *Lingan* & al. v. *Carroll,* 3 *Harris & McHenry,* 333., that it is only necessary to refer to them.  As to that part of the estate, therefore, of which the devise is void, it is to be distributed to the heirs, as intestate estate.

8.  The debts, funeral charges, and expense of monuments, are to be deducted out of the residuary portion of the estate, that being according to the terms of the will ; but, as there is no provision of that kind respecting the expenses of settling the estate, those expenses must be charged, as in ordinary cases.

The superior court should be advised in conformity with the foregoing opinion.

In this opinion the other Judges concurred.